**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Brian William HOKE, Jr., Appellant.**

Superior Court of Pennsylvania.

Submitted April 9, 2007.
Filed June 26, 2007.

---

Kent D. Watkins, St. Clair, for appellant.

James P. Goodman, Asst. Dist. Atty., Pottsville, for Com., appellee.

BEFORE: FORD ELLIOTT, P.J., TODD, and COLVILLE *, JJ.

OPINION BY TODD, J.:

¶ 1 Brian William Hoke, Jr. appeals the judgment of sentence imposed by the Schuylkill County Court of Common Pleas after he was convicted of possession of drug paraphernalia, manufacturing a controlled substance, risking a catastrophe, and criminal conspiracy to commit each of the same. We affirm.

¶ 2 At trial, the Commonwealth presented the testimony of Frances Green and Natalie Maurer. Maurer testified that she came to know Appellant through a casual friendship she had with Mike Lisowski. Maurer testified that on separate occasions, she drove Appellant and Lisowski to a feed shop to purchase iodine, and that, at Appellant's request, she drove Lisowski to Lowes to purchase muriatic acid. Maurer testified that at one point, Appellant and Lisowski told her that if she told anyone about the what they were doing, she would be killed.

¶ 3 Green testified that in the fall of 2004, at the request of Appellant and with Appellant's money, he went with Appellant, Maurer, and Lisowski to Wal–Mart to buy Sudafed, where they each purchased the legal maximum of three boxes. Green testified that he entered the store a second time to purchase an additional three boxes of Sudafed. Green testified that after purchasing the Sudafed, he, Appellant, Maurer, and Lisowski then took all of the ingredients to a house in Forestville where Appellant gave the others a bag of matches that he had in the trunk of his car and instructed them to cut off the heads of the matches and place them in some liquid. Green testified that during this time, Appellant stated that he was cooking methamphetamine.

¶ 4 At some point, the group left the house in Forrestville with camping fuel, a "push and pull" comprised of two soda bottles and hoses [1], and muriatic acid, and traveled to the apartment of JoBeth Wesen in Pottsville. When the group arrived, Appellant told Wesen that the product was not finished yet, but she would get it when it was done. Green testified at trial that Wesen had invested in the production materials.

¶ 5 Maurer testified that on a separate occasion, on November 14, 2004, she was at Wesen's apartment fixing a computer

---

* Retired Senior Judge assigned to the Superior Court.

1. Forensic scientist John Evans testified at trial that this device is a type of homemade reaction flask or reaction vessel used to manufacture methamphetamine from ephedrine. (N.T. Trial, 5/1/06, at 210–11.)

when Appellant and Lisowski entered the residence carrying boxes containing books of matches, muriatic acid, lye, and a push and pull, and that they asked Wesen to store the items in a back bedroom. Appellant indicated that they were going to use the items to make more methamphetamine.

¶ 6 On November 15, 2004, officers of the Pottsville Police Department conducted a search of Wesen's apartment with her consent. The items seized by police included muriatic acid, lye, hundreds of empty matchbooks, numerous boxes of Sudafed, jars, pink-colored coffee filters, a push and pull, and a computer printout entitled "How to Make Meth."

¶ 7 Appellant initially was charged with multiple counts of criminal conspiracy under 18 Pa.C.S.A. § 903, possession with intent to manufacture a controlled substance under 35 P.S. § 780–113(a)(30), possession of drug paraphernalia under 35 P.S. § 780–113(a)(32), and risking a catastrophe under 18 Pa.C.S.A. § 3302. However, at the close of testimony, the Commonwealth moved to amend the information to substitute the charge of possession with intent to manufacture a controlled substance with the charge of manufacturing a controlled substance under the same subsection of the statute. Over Appellant's objection, the trial court permitted the amendment.

¶ 8 Following his conviction, Appellant was sentenced to an aggregate term of 4 to 8 years incarceration. Appellant filed a post-sentence motion, which was denied by operation of law. On appeal, Appellant presents the following issues for this Court's review, which we have reordered,:

1. Did the court improperly allow the amendment of the information after the testimony at trial?

2. Was the evidence sufficient … to support a conviction for the charge of manufacture of a controlled substance?

3. Was the evidence sufficient to convict [Appellant] of risking a catastrophe?

4. Did the court improperly sentence [Appellant] on the charge of conspiracy and attempt to manufacture methamphetamine?

5. [Should Appellant's sentence] be modified because the mandatory sentencing provisions were improperly applied to the charge of conspiracy[?]

(Appellant's Brief at 4.)

¶ 9 With respect to Appellant's argument that the trial court improperly permitted the Commonwealth to amend the information after the testimony was presented at trial, we note that Rule 564 of the Pennsylvania Rules of Criminal Procedure provides:

The court may allow an information to be amended when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Pa.R.Crim.P. 564.

¶ 10 The purpose of this rule "is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed." *Commonwealth v. Bricker*, 882 A.2d 1008, 1019 (Pa.Super.2005) (quoting *Commonwealth v. Davalos*, 779 A.2d 1190, 1194 (Pa.Super.2001)). The test to be applied is:

[W]hether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.

*Bricker,* 882 A.2d at 1019 (citation omitted).

¶ 11 Appellant contends that "[t]he amendment made by the Commonwealth from *possession with intent to deliver methamphetamine* to manufacture of methamphetamine charged a different offense that would require a shift in defense strategy [and] a change in the basic nature in the proofs required at trial." (Appellant's Brief at 11–12 (emphasis added).) The initial information, however, did not charge Appellant with possession with intent to deliver methamphetamine; rather, it charged Appellant with possession with intent to manufacture a controlled substance, namely, methamphetamine. As the amended charge of manufacture of a controlled substance involves the same basic elements, and evolved out of the same factual situation, as the initial charge of possession with intent to manufacture, Appellant cannot claim that he was not placed on notice regarding his alleged criminal conduct, or that he was prejudiced by the amendment. Accordingly, we find no error by the trial court in allowing the amendment.

¶ 12 Appellant next argues that the evidence was insufficient to support his conviction under 35 P.S. § 780–113(a)(30) for manufacturing a controlled substance. When presented with a claim that the evidence was insufficient to sustain a conviction,

an appellate court, viewing all the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth as the verdict winner, must determine whether the evidence was sufficient to enable the fact finder to find that all of the elements of the offenses were established beyond a reasonable doubt.

*Commonwealth v. Hawkins,* 549 Pa. 352, 366, 701 A.2d 492, 499 (1997). Furthermore, "[t]he Commonwealth may sustain its burden by proving the crime's elements with evidence which is entirely circumstantial and the trier of fact, who determines credibility of witnesses and the weight to give the evidence produced, is free to believe all, part, or none of the evidence." *Commonwealth v. Brown,* 701 A.2d 252, 254 (Pa.Super.1997).

¶ 13 Section 780–113(a)(30) prohibits, except as otherwise authorized,

the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780–113(a)(30).

¶ 14 Appellant argues that the evidence was insufficient to support his conviction under Section 780–113(a)(30), and, at most, the evidence proved an *attempt* to manufacture methamphetamine by possessing the necessary ingredients with the intent to manufacture a controlled sub-

stance, or possessing precursors and chemicals as prohibited under Section 780–113.1(a)(3).[2] However, upon a review of the evidence presented at trial, we agree with the trial court that the evidence clearly was sufficient to support Appellant's conviction for the manufacture of a controlled substance under Section 780–113(a)(30). The evidence established that Appellant was engaged in various stages of manufacturing methamphetamine at the house in Forestville, and at Wesen's house in Pottsville.[3] The fact that Appellant's actions may also have constituted a violation of Section 780–113.1(a)(3) does not alter this conclusion.

■ ¶ 15 Appellant also challenges the sufficiency of the evidence with respect to his conviction for risking a catastrophe. Section 3302 of the Crimes Code, entitled "Causing or risking catastrophe", provides:

(a) Causing catastrophe.—A person who causes a catastrophe by explosion, fire, flood, avalanche, collapse of building, release of poison gas, radioactive material or other harmful or destructive force or substance, or by any other means of causing potentially widespread injury or damage, including selling, dealing in or otherwise providing licenses or permits to transport hazardous materials in violation of 75 Pa.C.S. Ch. 83 (relating to hazardous materials transportation), commits a felony of the first degree if he does so intentionally or

knowingly, or a felony of the second degree if he does so recklessly.

(b) Risking catastrophe.—A person is guilty of a felony of the third degree if he recklessly creates a risk of catastrophe in the employment of fire, explosives or other dangerous means listed in subsection (a) of this section.

18 Pa.C.S.A. § 3302.

¶ 16 Again, we agree with the trial court that the evidence was sufficient to support Appellant's conviction. Despite his assertion that there was no testimony that Appellant handled the various substances together at Wesen's residence, and that he simply delivered the items to the residence, the testimony established that Appellant did, in fact, engage in the process of cooking methamphetamine at the house in Forrestville, and then transported camping fuel and muriatic acid for the purpose of continuing production. Furthermore, John Evans, a forensic scientist with the Pennsylvania State Police, testified as to the dangers involved with home methamphetamine labs:

In a home atmosphere such as where most clandestine labs occur, the motors of the appliances, they are not explosion proof. If someone is evaporating off solvents in the house, they're going to accumulate to a point where just a simple act of throwing a light switch, turning a light on and off or turning a TV set on and off could potentially cause the

---

2. Section 780–113.1, entitled "Liquefied ammonia gas; precursors and chemicals", prohibits, in relevant part, "[p]ossessing red phosphorous, hypophosphoric acid, ammonium sulfate, phosphorous, iodine, hydriodic acid, ephedrine, pseudoephedrine, lithium, sodium, potassium, sassafras oil, safrole oil or other oil containing safrole or equivalent, whether in powder or liquid form, with intent to manufacture a controlled substance." 35 P.S. § 780–113.1(a)(3).

3. Although Appellant asserts in his Statement of the Case that "[t]he court erred in allowing Natalie Maurer to testify about incidents at Forestville," (Appellant's Brief at 5), we find this claim to be waived, as Appellant failed to include it in his Statement of Issues, and failed to develop the argument beyond his one-sentence parenthetical. See Pa.R.A.P. 2119; Collins v. Cooper, 746 A.2d 615, 619 (Pa.Super.2000).

solvents in the atmosphere to ignite and/or explode.

(N.T. Trial, 5/1/06, at 199–200.)

¶ 17 As the trial court noted, Appellant assembled all of the ingredients for the manufacture of methamphetamine together at Wesen's apartment. Based on Evan's testimony, we agree with the trial court that the evidence was sufficient to support Appellant's conviction for risking a catastrophe.

¶ 18 Appellant next contends that the trial court improperly sentenced him on the charge of conspiracy and attempt to manufacture methamphetamine, and argues that these offenses should have merged for sentencing purposes because both offenses are inchoate crimes.[4] However, as the trial court noted in its opinion written in support of its denial of Appellant's post-sentence motion, Appellant was convicted of manufacturing methamphetamine, a non-inchoate crime, not attempt to manufacture, and the trial court sentenced Appellant only on the first conspiracy charge, determining that the other conspiracy charges for which Appellant was convicted merged for sentencing purposes. Thus, Appellant was not sentenced on more than one inchoate crime, and his claim of error is without merit.

¶ 19 Finally, Appellant contends that the trial court improperly applied the mandatory minimum sentencing provision under 35 P.S. § 780–113(k) to his conviction for conspiracy. Pursuant to 18 Pa. C.S.A. § 905, "[e]xcept as otherwise provided in this title, attempt, solicitation and conspiracy are crimes of the same grade and degree as the most serious offense which is attempted or solicited or is an object of the conspiracy." 18 Pa.C.S.A.

§ 905(a). Thus, as Appellant was convicted of the manufacture of a controlled substance, the conspiracy charge on which he was sentenced was subject to the same mandatory sentencing provision as the offense of manufacturing a controlled substance set forth under 35 P.S. § 780–113(k).

¶ 20 For all of the foregoing reasons, we hold that Appellant is not entitled to relief, and we therefore affirm his judgment of sentence.

¶ 21 Judgment of sentence **AF-FIRMED.**

---

4. We note that a claim that the trial court erred in failing to merge offenses for sentencing purposes implicates the legality of the sentence, and, therefore, does not require a statement pursuant to Rule 2119(f) of our rules of appellate procedure.