J-S46028-18

2018 PA Super 305

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                :           PENNSYLVANIA
                                :
        v.                      :
                                :
                                :
                                :
AARON M. MCCOY                  :
                                :
        Appellant               :    No. 627 EDA 2017

Appeal from the Judgment of Sentence January 11, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000366-2016

BEFORE:  BOWES, J., SHOGAN, J., and KUNSELMAN, J.

OPINION BY SHOGAN, J.:                        **FILED NOVEMBER 14, 2018**

Aaron M. McCoy ("Appellant") appeals from the judgment of sentence entered on January 11, 2017, in the Court of Common Pleas of Philadelphia County.  For the reasons that follow, we reverse two convictions, vacate the judgment of sentence, and remand.

The trial court summarized the facts and procedural history of this case as follows:

> On December 22, 2015, police officers Thomas Strain and Shawn Wills responded to a call at 116 West Fisher Avenue.  N.T. (Trial) 01/11/2017 at 11; *see also* N.T. (Suppression Hearing) 11/29/2016 at 7–8, 11–13, 47–49.  There they met Appellant…, who was complaining about trespassers.  *Id.* These trespassers happened to be the relatives of [Appellant's] recently deceased girlfriend.  [Appellant] claimed that they not only were rummaging through his apartment looking for papers such as her will and insurance policies, but also were also [sic] taking his personal property.  N.T. (Trial) 01/11/2017 at 68; N.T. (Suppression Hearing) 11/29/2016 at 10, 47, 50.  While speaking to the individuals in the apartment, Officer Strain was informed by the mother of Appellant's late girlfriend that Appellant was growing

marijuana in his apartment. N.T. (Trial) 01/11/2017 at 12; N.T. (Suppression Hearing) 11/29/2016 at 8, 15, 50. Officer Strain asked Appellant where the marijuana was and testified that Appellant showed him to a closet in the front bedroom. N.T. (Trial) 01/11/2017 at 13; N.T. (Suppression Hearing) 11/29/2016 at 9, 16–17. The closet door was closed, but Officer Strain noticed bags of potting soil and fans in the bedroom. N.T. (Trial) 01/11/2017 at 17; N.T. (Suppression Hearing) 11/29/2016 at 17–18. [Appellant] then opened the closet door, revealing the marijuana plants inside. N.T. (Trial) 01/11/2017 at 13 N.T. (Suppression Hearing) 11/29/2016 at 9, 18–19. [Appellant] stated that he just grew the marijuana as a hobby and did not sell it. N.T. (Trial) 01/11/2017 at 13; N.T. (Suppression Hearing) 11/29/2016 at 9. Officer Strain then placed Appellant…under arrest and called for a search warrant to be prepared, which was subsequently executed on the property by Officer Michael Vargas. N.T. (Trial) 01/11/2017 at 17, 27–28; N.T. (Suppression Hearing) 11/29/2016 at 9–10, 35. The police recovered 31 marijuana plants and one Sun Glo (sometimes referred to as "Sun God") brand heat lamp and the seized items were recorded on police property receipts. N.T. (Trial) 01/11/2017 at 28–29, 32–33.

On June 21, 2016, Appellant, through counsel, filed an Omnibus Pre-trial Motion seeking suppression of, *inter alia*, any illegally obtained physical evidence and Appellant's statements to the police. A hearing was held on Appellant's motion on November 29, 2016, and at the conclusion of the hearing, [the trial court] held the motion under advisement and denied it on December 12, 2016.

* * *

Appellant…waived his right to a jury trial on January 11, 2017, and he was found guilty of Risking a Catastrophe, Possession of Marijuana, and Recklessly Endangering Another Person.[1,2] That same date, [the trial court] sentenced Appellant to a term of three years' probation on the charge of risking catastrophe and no further penalty on the remaining charges. No post-sentence motions were filed, and Appellant filed a timely notice of appeal on February 10, 2017. On February 13, 2017 we issued an order pursuant to Pa.R.A.P. 1925(b) directing Appellant to file a Concise Statement of Matters Complained of on Appeal within twenty-one days. Appellant filed a Concise Statement on March 3, 2017, along with a Request for Extension of Time

pursuant to Pa.R.A.P. 1925(b)(2), which we granted on March 6, 2017. The deadline to file a supplemental 1925(b) statement was May 26, 2017 and Appellant declined to file a supplemental statement.

> [1] 18 Pa.C.S.A. § 3302(b), 35 P.S. § 780-113(a)(16), and 18 Pa.C.S.A. § 2705 respectively.
>
> [2] Additionally, just prior to trial, the Commonwealth *nolle prossed* the charge of possession of marijuana with the intent to manufacture or deliver. N.T. (Trial) 01/11/2017 at 8.

Trial Court Opinion, 5/31/17, at 1–2, 7–8.

On appeal, Appellant states the following questions for our consideration:

1. Was not the evidence insufficient to convict [Appellant] of risking catastrophe because the Commonwealth failed to prove the *mens rea* of recklessness or that his conduct created a risk of a catastrophe?

2. Did not the Commonwealth fail to present sufficient evidence to sustain a conviction for recklessly endangering another person because the evidence did not prove that [Appellant] acted recklessly or that he placed another person in danger of death or serious bodily injury?

Appellant's Brief at 2 (initial capitalization of words omitted).

Appellant complains that the evidence was insufficient to sustain the convictions of risking a catastrophe and recklessly endangering another person ("REAP"). Appellant's Brief at 9, 15. A successful sufficiency-of-the-evidence claim requires discharge. ***Commonwealth v. Toritto***, 67 A.3d 29 (Pa. Super. 2013). Whether the evidence was sufficient to sustain the charge presents a question of law. Our standard of review is *de novo*, and our scope

of review is plenary. **Commonwealth v. Walls**, 144 A.3d 926 (Pa. Super.

2016). In conducting our inquiry, we examine:

> whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, [is] sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

**Commonwealth v. Trinidad**, 96 A.3d 1031, 1038 (Pa. Super. 2014) (quoting

**Commonwealth v. Emler**, 903 A.2d 1273, 1276-1277 (Pa. Super. 2006)).

Within his first issue challenging the conviction of risking a catastrophe,

Appellant asserts two arguments. First, Appellant assails the testimony of the

Commonwealth's expert witness, Lieutenant Charles Grover, arguing that the

Commonwealth failed to prove beyond a reasonable doubt that "if a fire had

started as a result of [Appellant's] growing of marijuana it would have posed

a risk of a catastrophe, an extraordinary disaster." Appellant's Brief at 10.

The trial court addressed Appellant's "risking catastrophe" argument

with the following analysis:

> Here the evidence established that Appellant McCoy had converted a closet in his apartment to grow marijuana, using lamps, metal foil, electrical cords and wooden boards. N.T. (Trial) 01/11/2017, at 14, 28–29, 32–33. Lieutenant Charles Grover, a fire marshal qualified as an expert in the field of fire prevention,

testified that the marijuana plants, foil, hanging clothes, wood, paper, and bags present in the closet were all fire hazards. *Id.* at 41–42, 44, 45. He also testified that [Appellant] had used ordinary household extension cords to plug in the lamps in the closet, which he opined was dangerous because the lamp could draw a greater voltage than the cord was rated for (*i.e.*, 120 volts). *Id.* at 43. Lieutenant Grover concluded that in his expert opinion, [Appellant's] marijuana growing operation represented . . . "a risk of causing a fire" and further testified that it was an "extreme fire hazard." *Id.* at 47. Lieutenant Grover also testified that, in general, neglect of a marijuana growing operation contributes to it being a fire hazard. ***Id.*** at 41. He testified that the heat from the lamps used can dry out the marijuana plants and any other combustibles kept nearby, such as clothing, causing them to ignite. *Id.* at 41, 44. He also stated that because growing operations are often unattended, no one can put out the fire when it first begins and is still small. *Id.* at 43.

* * *

Here, the closest house was only five or six feet away from Appellant's home. N.T. (Trial) 01/11/2017, at 63.[4] This [is] also supported by [Appellant's] Exhibit 1, a photograph of the exterior of Appellant's home, which depicts a tree and a house to the left of Appellant's home about five to six feet away from Appellant's home. Another house is located to the right of Appellant's home, and that house is at least 15 away from Appellant's home. *See also* N.T. (Trial) 01/11/[2017], at 63 (Appellant testified[, "Y]ou could actually fit a semi-truck in between our house and the house on the right.").

> [4] [Appellant] testified that no one was living in the first floor apartment on the date he was arrested. N.T. (Trial) 01/11/2017 at 63.

As discussed, *supra*, Lieutenant Grover testified as to the numerous ways that [Appellant's] marijuana growing apparatus constituted an extreme fire hazard. He further testified that fire usually spreads up and out, *i.e.* to the sides of the building. *Id.* at 46. A fire originating from Appellant's marijuana growing operation would easily have spread to the neighboring tree and house. The Commonwealth established the element of risk of catastrophe beyond a reasonable doubt.

- 5 -

Trial Court Opinion, 5/31/17, at 14–15, 17.

Upon review, we conclude that the record supports the trial court's findings of fact. Officer Thomas Strain explained that Appellant lived in the second floor apartment of a freestanding house. N.T., 1/11/17, at 20, Exhibits D-1 and D-2. In Appellant's bedroom closet, Officer Strain saw marijuana plants, a fan, a lamp, wiring, cardboard wrapped in tinfoil, and he saw fertilizer and jugs of water elsewhere in the apartment. *Id.* at 10–26, Exhibits C-1 through C-5.

Officer Michael Vargas executed a search warrant and recovered thirty-one marijuana plants from Appellant's bedroom closet. N.T., 1/11/17, at 28. He placed the following on property receipts: the plants, a Sun Glo lamp, cardboard wrapped in tinfoil, pieces of mail in Appellant's name, and loose marijuana. *Id.* at 29–33, Exhibits C-5–C-9. Officer Vargas described the lamp's light bulb as "hot enough to heat the plants." *Id.* at 34.

The parties stipulated to Lieutenant Grover's expertise in the area of fire prevention and detection. N.T., 1/11/17, at 35. Lieutenant Grover had investigated 4,500 to 5,000 fires and explosions in Philadelphia over the previous eight years, and he had encountered marijuana-growing operations. *Id.* at 36–37. Not having seen Appellant's grow operation, Lieutenant Grover relied on his experience with other grow operations and the photographs of Appellant's closet and apartment. *Id.* at 38, 39–40, 48. Lieutenant Grover identified the components of a typical grow operation that create a risk of fire:

electrical wiring, an irrigation system, transformers, heat lamps, and chemicals. *Id.* at 38. Lieutenant Grover then identified the components of Appellant's grow operation that created a fire hazard: the lamp, fertilizer, water, and combustibles like cardboard, clothing, and clutter. *Id.* at 40–41.

Although the record supports the trial court's findings of fact, we reject its conclusion that the evidence was sufficient to sustain a conviction for risking a catastrophe. Viewing the evidence in the light most favorable to the Commonwealth, we acknowledge that Lieutenant Grover's testimony established that Appellant's grow operation created a fire hazard. N.T., 1/11/17, at 47. However, we agree with Appellant that creating a fire hazard does not equate with risking a catastrophe under the circumstances of this case.

"Risking a catastrophe is a crime which was unknown to the law of Pennsylvania prior to the passage of the Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973, 18 Pa.C.S.A. [§] 3302." *Commonwealth v. Simkins*, 443 A.2d 825, 827 (Pa. Super. 1982). The Crimes Code defines risking a catastrophe as follows:

> **(b) Risking catastrophe.--**A person is guilty of a felony of the third degree if he recklessly creates a risk of catastrophe in the employment of fire, explosives or other dangerous means listed in subsection (a) of this section.

18 Pa.C.S. § 3302(b).

> The offense of risking a catastrophe, it will be observed, can occur only in the employment of fire, explosives or other dangerous means listed in subsection (a). The forces or substances identified

- 7 -

by 18 Pa.C.S.A. § 3302(a), which defines the offense of causing a catastrophe, include: "explosion, fire, flood, avalanche, collapse of building, release of poison gas, radioactive material...or by any other means of causing potentially widespread injury or damage...."

**Simkins**, 443 A.2d at 827.

Applying Section 3302 to the facts of this case, we observe that a heat lamp, tinfoil-covered cardboard, wiring, extension cords, fertilizer, and water are not forces or substances specifically enumerated by the statute. "Therefore, if it is to be a substance whose handling can subject an actor to criminal liability for risking a catastrophe, it must be because the actor's improper handling of the substance is capable of causing widespread devastation." **Simkins**, 443 A.2d at 827 (quoting **Commonwealth v. Hughes**, 364 A.2d 306, 311 (Pa. 1976) (footnote omitted)) (internal quotation marks and parentheses omitted). The Pennsylvania Supreme Court has described the risk proscribed by Section 3302 as "the use of dangerous means by one who consciously disregards a substantial and unjustifiable risk and thereby unnecessarily exposes society to an extraordinary disaster." **Hughes**, 364 A.2d at 311 (emphasis and internal quotation marks omitted).

The **Hughes** Court observed: "Reading sections (a) and (b) together, it is clear that the forces and substances intended to be regulated are those which are capable of causing . . . widespread injury or damage. Thus, construing Section (b) in accordance with the fair import of its terms the word catastrophe is intended to be synonymous with widespread injury or damage."

*Hughes*, 364 A.2d at 306 (internal quotation marks omitted). *Accord Commonwealth v. Karetny*, 880 A.2d 505, 514 (Pa. 2005) (explaining that a catastrophe requires evidence of a sufficient risk of "an extraordinary disaster" with "widespread injury or damage"). "The fact that an actual devastating catastrophe was averted is of no moment in assessing…conduct in terms of Section 3302(b)." *Commonwealth v. Salamone*, 897 A.2d 1209, 1213 (Pa. Super. 2006) (citation omitted).

Despite the fact that Appellant lived in a free-standing house, Lieutenant Grover believed the house was a duplex and testified that an unattended fire could pose a risk to neighboring houses because "in Philadelphia, they're connected, they're row houses." N.T., 1/11/17, at 45–46. Lieutenant Grover opined that, because fire usually burns up, there was no danger that a fire would spread to the downstairs apartment unless it burned for a long time. *Id.* at 46. Lieutenant Grover admitted that he did not see evidence of transformers or an irrigation system in Appellant's operation. *Id.* at 49. He could not identify where the extension cords were located in the apartment or how the grow operation was wired. *Id.* at 50. He was not familiar with Sun Glo lamps, and he could not describe the type of lamp Appellant used or confirm whether it produced heat. *Id.* at 51–52, 58. As for the chemicals, Lieutenant Grover explained that they might cause an allergic reaction or respiratory problems, although the bag was flammable. *Id.* at 53. Lieutenant

Grover could not say where the combustibles depicted in the photographs were located in the residence. *Id.* at 55.

Based on the foregoing, we agree with Appellant that Lieutenant Grover's testimony established the existence of a grow operation which created a fire hazard, not the potential for widespread injury or damage. *Hughes*, 364 A.2d at 306. *Cf. Commonwealth v. Hoke*, 928 A.2d 300 (Pa. Super. 2007), *reversed on other grounds*, 962 A.2d 662 (Pa. 2009) (determining that testimony from a forensic scientist about the explosive dangers of a methamphetamine lab where the defendant had a laboratory inside a home was sufficient to prove risking a catastrophe); *Commonwealth v. John*, 596 A.2d 834 (Pa. Super. 1991) (holding evidence was sufficient to prove risking a catastrophe where the defendant intentionally set a fire in an apartment that was attached by a common hallway to a bingo hall where 100 people were playing bingo).

Additional facts undermine the sufficiency of the Commonwealth's evidence. Specifically, the grow operation was located in the second floor apartment of an otherwise empty free-standing house. Although Appellant's girlfriend lived with him before her death, Appellant lived alone in the apartment at the time of his arrest. Similarly, although the home to the left of Appellant's building was five or six feet away, there was no testimony that the neighboring house was occupied or that an unattended fire in Appellant's apartment could jump and engulf the neighboring house. Thus, the orbit of

danger included only Appellant and the dwelling in which he installed his grow operation. Even if Appellant's grow operation created the risk of a fire hazard, as Lieutenant Grover testified, we have held that "[f]ire involving a single residence, unoccupied except by the actor, is not the type of widespread damage contemplated by the statutory term 'catastrophe.'" *Simkins*, 443 A.2d at 828 (citing *Commonwealth v. McGinnis*, 392 A.2d 1350 (Pa. 1978)). Therefore, we conclude the Commonwealth did not present sufficient evidence to prove beyond a reasonable doubt that Appellant risked a catastrophe pursuant to 18 Pa.C.S. § 3302(b) under the facts of this case.

Appellant next argues that the Commonwealth failed to prove beyond a reasonable doubt the *mens rea* element of risking a catastrophe, *i.e.*, recklessness. According to Appellant, the Commonwealth did not present evidence that Appellant "was actually aware that his growing marijuana posed a substantial and unjustifiable risk of creating a catastrophe." Appellant's Brief at 13. In his defense, Appellant asserts that "he never had a fire, or apparent signs of a risk of a fire, and . . . he used safe products, and monitored the growing plants. . . . [A]t most, the Commonwealth's evidence showed that he exercised poor judgment in setting up his marijuana grow apparatus[,]" which does not equate to recklessness. *Id.* at 18–19 (citation omitted).

The trial court disposed of Appellant's *mens rea* argument with the following analysis:

> Appellant testified that he used a fluorescent lamp which did not generate heat in his marijuana growing operation. N.T. (Trial)

- 11 -

01/11/[2017], at 64. He further stated that the metal foil used in his closet was to reflect light, not heat, to the marijuana plants. *Id.* at 65. Furthermore, [Appellant] denied using an irrigation system, stating that he watered the marijuana plants with just a spray bottle. *Id.* at 66. [Appellant] further claimed that he and his late girlfriend monitored the marijuana plants, to the extent they sprayed them with water in the morning and the evening. *Id.* at 69–70. [Appellant] stated that because he was on disability, he had plenty of free time to spend at home. *Id.* at 70.

[Appellant's] actions were inadequate to ameliorate the obvious safety hazards identified by Lieutenant Grover. It was clear that [Appellant] knew that his marijuana-growing apparatus posed a risk of fire, but he did little to mitigate this serious risk. [Appellant] tried to insist that a fluorescent bulb used in a Sun Glo/Sun God "heat" lamp would not emit heat and thus be less incendiary, despite the fact that it was, by definition, a "heat" lamp for the purpose of reproducing the light and heat of the Sun for indoor cultivation. Furthermore, [Appellant] made no attempts to reduce the risk of fire from other sources, such as using electrical cords capable of safely powering the lamp and removing the combustible clutter in the closet. The Commonwealth established that [Appellant's] conduct, under the circumstances, consciously disregarded a substantial and unjustifiable risk of starting a fire and that doing so was a gross deviation from the standard of conduct that a reasonable person would observe in that situation.

Trial Court Opinion, 5/31/17, at 15–16.

The Crimes Code defines recklessness as follows:

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(3).

- 12 -

Here, the Commonwealth contends that Appellant's conduct created a risk that the marijuana plants or other combustibles would ignite. This concern is based primarily on Appellant's use of a heat lamp in the closet. We conclude that this evidence was insufficient to prove recklessness. In doing so, we note that the trial court did not find Appellant's testimony about the precautions he took incredible, but rather that his "actions were inadequate to ameliorate the obvious safety hazards identified by Lieutenant Grover." Trial Court Opinion, 8/23/17, at 17. Appellant may have been careless in using a heat lamp in a cluttered bedroom closet to grow marijuana. However, we disagree that his actions were inadequate to ameliorate a fire hazard and, therefore, were reckless. Appellant used a fluorescent lamp, which would not generate heat in his marijuana growing operation. N.T., 1/11/17, at 64. The metal foil used in his closet was to reflect light, not heat, to the marijuana plants. *Id.* at 65. Furthermore, Appellant did not use an irrigation system; instead, he watered the marijuana plants with a spray bottle. *Id.* at 66. Appellant and his late girlfriend monitored the marijuana plants, spraying them with water in the morning and the afternoon. *Id.* at 69–70. Because Appellant and his late girlfriend were on disability, they had plenty of free time to monitor the operation. *Id.* These facts negate the conclusion that Appellant acted recklessly in disregard of a risk of extraordinary disaster, widespread injury or damage. *Hughes*, 364 A.2d at 306.

Based on the foregoing, we conclude the Commonwealth failed to prove beyond a reasonable doubt that Appellant recklessly created a risk of catastrophe by growing marijuana in his bedroom closet. Thus, the Commonwealth's evidence was insufficient to sustain his conviction for risking a catastrophe pursuant to 18 Pa.C.S. § 3302(b).

Appellant's second issue challenges the evidence supporting his REAP conviction as insufficient on two grounds: putting another person at risk and lack of a reckless *mens rea*. Appellant's Brief at 15, 18. The REAP statute requires proof beyond a reasonable doubt that the defendant "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. According to the criminal definition statute, serious bodily injury is "[b]odily injury which creates a substantial risk of death or causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

First, Appellant argues that his grow operation never caused a fire, Lieutenant Grover only speculated that Appellant's grow operation could cause a fire, and Appellant monitored his grow operation daily. Appellant's Brief at 16–17. Thus, Appellant concludes, "[t]here was an insufficient showing that his conduct in choosing to grow marijuana plants actually placed any other person in danger of death or serious bodily injury." *Id.* at 17. We agree. The facts of record undermine the sufficiency of the Commonwealth's evidence

- 14 -

that another person was put at risk of death or serious bodily injury. As opined above, the orbit of danger included only Appellant and the otherwise unoccupied dwelling in which he installed his grow operation.

Second, Appellant argues the Commonwealth failed to prove that "he consciously was aware of and disregarded a substantial risk that death or serious bodily injury would result from his conduct." Appellant's Brief at 18 (citing 18 Pa.C.S. 302(b)(3) (definition of acting recklessly)). Thus, Appellant concludes, "at most the Commonwealth's evidence showed that he exercised poor judgment in setting up his marijuana grow [operation]." *Id.* at 18–19 (citing *Commonwealth v. Hutchins*, 42 A.3d 302, 312 (Pa. Super. 2012) ("That appellant exercised poor judgment . . . does not equate to recklessness.")). We agree. Appellant's testimony, which the trial court did not discount as incredible, demonstrates that Appellant did not disregard a known risk: he used safe, commercially available products, he watered the plants twice a day, and he monitored his grow operation daily. Thus, we conclude the Commonwealth did not present sufficient evidence to prove beyond a reasonable doubt that Appellant recklessly endangered another person pursuant to 18 Pa.C.S. § 3302(b) under the facts of this case.

In conclusion, the evidence was insufficient to sustain Appellant's convictions for risking catastrophe and REAP. Consequently, we reverse those convictions. Because Appellant did not challenge his possession conviction, we affirm that conviction. By reversing two of Appellant's convictions, we

have upset the trial court's overall sentencing scheme, specifically the no-further-penalty sentence imposed on the possession conviction. Thus, we vacate the judgment of sentence and remand for resentencing on the unchallenged possession conviction. ***See Commonwealth v. Goldhammer***, 517 A.2d 1280, 1283 (Pa. 1986) (stating that where appellate court upsets the trial court's overall sentencing scheme by vacating a conviction in a multiple-count appeal, the appellate court must remand for re-sentencing because sentencing lies within the sole discretion of the trial court).

Convictions for risking a catastrophe and REAP reversed. Possession conviction affirmed. Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judge Kunselman joins the Opinion.

Judge Bowes files a Concurring Opinion.

Judgment Entered.

_(signature)_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/14/18