J-S40040-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BENJAMIN HARMAN MARTIN | : | |
| | : | |
| Appellant | : | No. 801 EDA 2024 |

Appeal from the Judgment of Sentence Entered October 24, 2023
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0002006-2022

BEFORE: STABILE, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY LANE, J.: **FILED JANUARY 29, 2025**

Benjamin Harman Martin ("Martin") appeals from the judgment of sentence imposed following his convictions of risking catastrophe and harassment.[1]  We affirm.

We summarize the relevant factual history underlying this appeal. Martin was married to Courtney Spiker ("Spiker"), and the couple had two children.  In April 2021, Martin and Spiker separated, and Martin moved out of the marital home in Rutledge, Pennsylvania, where Spiker continued to reside with the children.

During the afternoon of November 27, 2021, Spiker picked up the couple's son from Martin's custody.  Shortly after this custody exchange, Martin sent a text message to Spiker stating that he would come to her home

---

[1] 18 Pa.C.S.A. §§ 3302(b), 2709(a)(3).

that evening to retrieve his personal property. Given the contentiousness of their relationship, Spiker left the house with their children to stay at a friend's house for the night. Spiker also called 911 to complain of harassment as she had previously informed Martin that their communications should be limited to custody matters.

Martin arrived at Spiker's home at approximately 5:30 p.m. and stayed a little more than three hours. Martin did not have a key to the home and broke in through a basement window. Martin caused substantial damage to the home, including ripping cabinets from the walls, disconnecting the alarm system, removing smoke detectors, and strewing various personal and decorative items around the house. Additionally, Martin placed cardboard boxes, dog food, and other household items on top of the gas stove in the kitchen. Martin turned on all four burners to low, emitting flammable gas, without a flame.

At approximately 10:00 p.m., three neighbors, Marjorie Hatzell ("Mrs. Hatzell"), Isaac Hatzell ("Mr. Hatzell"), and Swarthmore Borough Police Sergeant William Thomas ("Sergeant Thomas"), checked on Spiker's home. Upon entering the front door, they instantly noticed the odor of gas and went into the kitchen. After discovering that the burners were on, Sergeant Thomas turned the burner knobs off, past the ignition setting, producing a small flame, but no explosion. Sergeant Thomas then opened doors and windows to air out the home, and he and Mr. Hatzell checked the basement to confirm that

- 2 -

there was no other source of a gas leak. The neighbors locked up the home before Spiker's return to the house the following day.

On August 8, 2023, following a non-jury trial, the trial court found Martin guilty of the above-stated offenses.[2] On October 24, 2023, the trial court imposed a sentence of six to twenty-three months' imprisonment, with the first three months to be served in county prison and the next three months on house arrest with electronic monitoring, followed by four years' probation. Martin filed a timely notice of appeal.[3] Both he and the trial court have complied with Pa.R.A.P. 1925.

Martin presents the following issue for our review: "Whether the trial court committed reversible error when it concluded that the evidence presented by the Commonwealth was sufficient to sustain a conviction for risking a catastrophe?" Martin's Brief at 3 (italics and unnecessary capitalization omitted).

---

[2] The trial court found Martin not guilty of three counts of recklessly endangering another person and one count of terroristic threats.

[3] Martin filed an initial notice of appeal prior to the trial court's ruling on his post-sentence motion, which deprived the trial court of jurisdiction to rule on his post-sentence motion. **See** Pa.R.Crim.P. 720, *comment* ("No direct appeal may be taken by a defendant while his or her post-sentence motion is pending."); Pa.R.A.P. 1701(a) ("Except as otherwise prescribed by these rules, after an appeal is taken . . ., the trial court . . . may no longer proceed further in the matter."); **Commonwealth v. Claffey**, 80 A.3d 780, 783 (Pa. Super. 2013) (notice of appeal taken while post-sentence motion remains pending is premature). Martin discontinued his initial appeal, and the trial court entered an order denying his post-sentence motion. The instant notice of appeal, which Martin filed within thirty days of the entry of the order denying his post-sentence motion, is timely. **See** Pa.R.Crim.P. 720(A)(2)(a).

In his sole issue, Martin argues that the Commonwealth did not present sufficient evidence that he created a risk of catastrophe. Our review of a sufficiency claim is well settled:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the factfinder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the factfinder.

***Commonwealth v. Scott***, 325 A.3d 844, 849 (Pa. Super. 2024) (citation and brackets omitted; italicization added).

Section 3302(b) of the Crimes Code provides that an individual commits the offense of risking catastrophe "if he recklessly creates a risk of catastrophe in the employment of fire, explosives or other dangerous means listed in subsection (a) of this section." 18 Pa.C.S.A. § 3302(b). The forces or substances listed in Section 3302(a) include "explosion, fire, flood, avalanche, collapse of building, release of poison gas, radioactive material or other harmful or destructive force or substance, or . . . any other means of causing potentially widespread injury or damage." 18 Pa.C.S.A. § 3302(a).

As our Supreme Court has explained, the "means" by which an individual may risk a catastrophe "need not be specifically enumerated in the statute nor must they be *per se* dangerous in the absence of other factors," but rather "it is only required that the 'means' in a given case have the potential to cause a catastrophe." ***Commonwealth v. Karetny***, 880 A.2d 505, 517 (Pa. 2005); ***see also Commonwealth v. Mikitiuk***, 213 A.3d 290, 301 (Pa. Super. 2019) (providing that Section 3302(a)'s list of dangerous means is "open-ended and not exhaustive"). The term catastrophe as used in the statute is "synonymous with 'widespread injury or damage.'" ***Commonwealth v. Hughes***, 364 A.2d 306, 312 (Pa. 1976); ***see also Mikitiuk***, 213 A.3d at 301. "The 'risk' proscribed by the statute is the use of dangerous means by one who 'consciously disregards a substantial and justifiable risk' and thereby unnecessarily exposes society to an extraordinary disaster." ***Mikitiuk***, 213 A.3d at 301 (quoting ***Hughes***, 364 A.2d at 311).

Martin argues that the Commonwealth did not prove that he created a risk of catastrophe because the evidence demonstrated only a risk of fire involving a single residence in a neighborhood of freestanding homes. Martin contends that "a fire hazard is not the quality of risk contemplated by the" risking catastrophe statute. Martin's Brief at 11. In the absence of evidence that his "convicted conduct would have caused incomprehensible, immense, extraordinary, and widespread harm," Martin asserts that this Court must vacate his judgment of sentence. ***Id***.

The trial court considered Martin's sufficiency claim and determined that it lacked merit:

> The Commonwealth's evidence established that [Martin] released a flammable gas into the marital home. Mrs. Hatzell immediately smelled the odor of gas when she entered the home an hour after [Martin's] departure. Sergeant Thomas, Mr. Hatzell, and Mrs. Hatzell went into the kitchen and observed the stove burners were on and emitting flammable gas with no flame. All of the laypeople in the home testified they were aware of the risk of an explosion if a flame were to ignite. Mrs. Hatzell noticed the knob would have to be turned past the ignition to turn off the stove completely. Sergeant Thomas started to turn off the first burner when all three witnesses heard the click of the flame ignition on the stove and jumped back to avoid an explosion. From this evidence, [the trial c]ourt finds the Commonwealth presented sufficient evidence to establish that [Martin's] conduct of emitting flammable gas into the marital home had the potential to cause a catastrophe causing widespread injury or damage. *See Karetny*, 880 A.2d 505 []; *see also Hughes*, 364 A.2d [at] 311-12 []; 18 Pa.C.S.A. §[] 3302.

Trial Court Opinion, 5/7/24, at 9-10. The trial court further stated:

> A reasonable person understands that leaving a stove burner on, but not ignited, will emit flammable gas. A reasonable person understands that the gas that is emitted from the burner is extremely flammable. A reasonable person understands that leaving this stove burner, unattended, to emit flammable gas for a prolonged period and in a closed space could cause an explosion or fire. . . .

*Id*. at 10.

Based on our review of the record, we conclude that the record supports the trial court's determination that the evidence was sufficient to prove that Martin created a risk of catastrophe by turning on all four burners of the gas stove in Spiker's home. The evidence at trial showed that the Hatzells and

- 6 -

Sargeant Thomas all smelled gas as soon as they entered the home, the burners were all turned on low, and the windows and doors of the house were closed, allowing the gas to accumulate. *See* N.T., 8/8/23, at 70-71, 84, 97-99, 107, 123-26. Spiker confirmed that the stove was turned off and she locked the door when she left the home, and Mrs. Hatzell testified that she was closely observing the house and no one else entered after Martin left the premises. *See id*. at 25, 29, 92, 94.

Furthermore, the neighbors' concern of a potential explosion was not misplaced based on the fact that the stove "clicked" as Sergeant Thomas turned the knob past the ignition setting and the burners "puffed up [and] ignited a little bit" with a "slight flame." *See id*. at 71, 85-86, 98, 116-18, 124.[4] Martin increased the chance of widespread damage by placing cardboard boxes and other flammable materials on top of the burners and removing smoke detectors. *See id*. at 28-29, 33, 71, 74, 98, 124, 126. While Martin emphasizes the fact that Spiker's house was freestanding, the distance between her home and the houses on either side was only around fifteen feet. *See id*. at 43, 67, 99. This evidence was thus sufficient to establish that Martin's actions created a risk of a potential explosion caused by the ignition

---

[4] The fact that Spiker's neighbors prevented an explosion by promptly entering the home after Martin's departure and turning off the gas burners does not impact our sufficiency analysis. *See Commonwealth v. Scatena*, 498 A.2d 1314, 1317 (Pa. 1985) (holding that the "fact that swift and effective governmental intervention" averted "an actual devastating catastrophe" is "of no moment in assessing [a defendant's] conduct in terms of Section 3302(b)").

of natural gas, which could have caused widespread damage to both Spiker's home and neighboring homes. **See Mikitiuk**, 213 A.3d at 301-02 (finding evidence sufficient to support risking catastrophe conviction based on defendant's possession of flammable and explosive chemicals used in methamphetamine manufacture, in the bed of a pickup truck, which was parked an urban area near multiple buildings).

We further determine that **Commonwealth v. McCoy**, 199 A.3d 411 (Pa. Super. 2018), and **Commonwealth v. Simkins**, 443 A.2d 825 (Pa. Super. 1982), which Martin relies on in arguing that a fire hazard in a detached dwelling is insufficient proof of risking catastrophe, are not analogous to the present case. In **McCoy**, this Court reversed a risking catastrophe conviction related to a marijuana grow operation in a second-floor apartment of an otherwise empty building where there was no evidence that an unattended fire in the apartment could reach the nearby freestanding buildings or that those buildings were occupied. **See McCoy**, 199 A.3d at 417-18. As we explained, the defendant's actions could not have caused widespread damage or injury where "the orbit of danger included only [the defendant] and the dwelling in which he installed his grow operation." **Id**. at 418.

Similarly, in **Simkins**, we overturned a risking catastrophe conviction arising out of a fire in the defendant's rural home used for amphetamine production, where the defendant jeopardized only himself and his residence, not any neighboring structures. **See Simkins**, 443 A.2d at 827-28. Unlike **McCoy** and **Simkins**, where the orbit of risk extended only to the defendant

and a single building, Martin's conduct in purposefully allowing flammable gas to accumulate in Spiker's home risked widespread injury or harm to Spiker and the couple's two children, as well as the neighboring, closely situated homes.

As we conclude that the evidence was sufficient to prove the offense of risking catastrophe, no relief is due on Martin's sole appellate issue. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/29/2025