J-S45020-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| THERESA R. SALAZAR | : | |
| | : | |
| Appellant | : | No. 800 MDA 2024 |

Appeal from the Judgment of Sentence Entered January 18, 2024
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s):  CP-41-CR-0001187-2022

BEFORE:  OLSON, J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY DUBOW, J.:                    **FILED: MARCH 21, 2025**

Appellant, Theresa R. Salazar, appeals from the January 18, 2024 judgment of sentence entered by the Lycoming County Court of Common Pleas following her conviction of, *inter alia*, Risking Catastrophe and Recklessly Endangering Another Person ("REAP").  On appeal, Appellant challenges the sufficiency of the evidence and claims that the trial court should have merged her sentences for Risking Catastrophe and REAP.  After careful review, we affirm the judgment of sentence.

On July 3, 2022, Appellant drove her minivan through the entrance of the Little League Museum in South Williamsport.  The trial court recited the relevant facts:

> Being the July 4th Holiday weekend, the Little League Museum was occupied by a number of employees and patrons at the time of the [i]ncident.  The vehicle was travelling southbound on Route 15 Highway in front of the museum.  It stopped and waited for oncoming traffic before making a left turn, crossing the

northbound lane and entering Little League property. It then crashed into the entryway and momentarily stopped in the vestibule. At least one Little League employee began to approach the vehicle to check on the driver, when the driver hit the accelerator, crashed through another set of lobby doors and drove further into the building until hitting an interior wall approximately 20-25 feet north of the interior lobby doors.

Four Museum employees and two patrons were in the immediate area of the impact, and approximately three dozen other employees and patrons were in the building at the time. At least some of those individuals were in plain view of [Appellant] when she accelerated further into the building. Upon hitting the interior wall, [Appellant] turned to an employee and said, "I am Teresa Salazar. You know who I am, and you should be scared." The employees and patrons largely fled the immediate area of the accident, but [Appellant] remained and was taken into custody by South Williamsport Police shortly thereafter.

Trial Ct. Op. and Order, 5/21/24, at 1-2.

The trial court explained that for decades prior to this incident Appellant "maintained a vendetta against Little League Baseball[,]" based upon her belief that Little League Baseball should have credited her relatives, George and Bert Bebble, as co-founders of Little League. *Id.* at 1. Over the years, she "had numerous contacts with Little League officials, sent numerous messages to them[,] and attempted to extract monetary compensation from the organization." *Id.* Indeed, Appellant left several voice mails with Little League Baseball on the day before, and on the morning of, the incident. *Id.* at 5 n.21.

The Commonwealth charged Appellant with numerous crimes related to the incident. The trial court presided over a three-day jury trial, from November 7-9, 2023, during which Appellant testified in her own defense,

claiming that she crashed through the building due to a "sneezing attack." N.T., 11/9/23, at 27.

On November 9, 2023, the jury convicted Appellant of the following crimes: Risking Catastrophe, Criminal Trespass, Terroristic Threats, Criminal Mischief, and six counts of REAP.[1] The jury acquitted Appellant of Attempted Murder, Aggravated Assault-Attempt to Cause Bodily Injury with a Deadly Weapon, and Aggravated Assault-Attempt to Cause Serious Bodily Injury.

On January 18, 2024, the court sentenced Appellant to an aggregate sentence of 6 to 43 years of incarceration, which included a sentence of 6 months to 7 years of incarceration for Risking Catastrophe and 6 months to 2 years of incarceration for each of the six REAP counts, with all sentences imposed consecutively.

On January 23, 2024, Appellant filed a post-sentence motion raising numerous issues, including those raised on appeal. On May 21, 2024, the court denied the motion, setting forth its analysis in a thorough opinion.

Appellant filed a notice of appeal on June 3, 2024. Appellant and the trial court complied with Pa.R.A.P. 1925(a), with the trial court relying upon its May 21, 2024 opinion.

Appellant raises the following questions on appeal:

1. Was the evidence presented insufficient to sustain a guilty verdict for Risking a Catastrophe?

---

[1] 18 Pa.C.S. §§ 3302(b), 3503(a)(1)(ii), 2706(a)(3), 3304(a)(1), and 2705, respectively.

2. Did the trial court impose an illegal sentence, thereby committing an abuse of discretion and error of law when it did not merge the sentences for [REAP] with the count of Risking a Catastrophe?

Appellant's Br. at 5.

Appellant first claims that the Commonwealth presented insufficient evidence to sustain her conviction for Risking Catastrophe. Appellant's Br. at 23-33. As challenges to the sufficiency of the evidence raise questions of law, "our standard of review is *de novo*[,] and our scope of review is plenary." *Commonwealth v. Johnson*, 236 A.3d 1141, 1152 (Pa. Super. 2020) (*en banc*) (citation omitted). "We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa. Super. 2017) (citation and internal question marks omitted). The trier of fact may rely "wholly on circumstantial evidence" and is "free to believe all, part, or none of the evidence." *Id.* "[An] appellate court may not weigh the evidence and substitute its judgment for the fact-finder." *Id.*

Relevant to Appellant's claim, a person is guilty of Risking Catastrophe "if [s]he recklessly creates a risk of catastrophe in the employment of fire, explosives or other dangerous means listed in [Section 3302(a)]. 18 Pa.C.S. § 3302(b). Section 3302(a) provides the following non-exclusive list of dangerous means: "explosion, fire, flood, avalanche, collapse of building, release of poison gas, radioactive material or other harmful or destructive

- 4 -

force or substance, or **by any other means of causing potentially widespread injury or damage**[.]" *Id.* at § 3302(a) (emphasis added). "The Pennsylvania Supreme Court has described the risk proscribed by Section 3302 as the use of dangerous means by one who consciously disregards a substantial and unjustifiable risk and thereby unnecessarily exposes society to an extraordinary disaster." *Commonwealth v. McCoy*, 199 A.3d 411, 417 (Pa. Super. 2018) (internal quotation marks omitted) (quoting *Commonwealth v. Hughes*, 364 A.2d 306, 311 (Pa. 1976)).

Appellant avers that the Commonwealth failed to prove that she employed a "dangerous means" as required by the statute. Appellant's Br. at 23-33. She argues that "[e]ven if Appellant acted recklessly in driving her van into the glass entrance of the museum, that action does not amount to the use of fire, explosives, collapse of building, or a harmful or destructive force that could bring about a catastrophe." *Id.* at 28 (internal quotation marks omitted). Appellant notes that there were no injuries and the "building did not collapse." *Id.* at 31. She claims that her actions did not risk the widespread injury or damage required by the statute, asserting that "her actions do not equate to the plain understanding and meaning of what society would define as a catastrophe." *Id.* at 28.

We disagree. As the trial court explained, "[w]hen one deliberately or recklessly propels two tons of metal and related materials at speed into an occupied business during normal business hours on a holiday weekend, when it may very well be occupied by many people, widespread injury to persons

- 5 -

and damage to property is a possible, if not a probable, outcome." Trial Ct. Op. and Order at 15. Accordingly, following our *de novo* review, we conclude that the Commonwealth presented sufficient evidence from which the jury could conclude that Appellant committed an act "that put large numbers of people at risk of death or serious bodily injury and that caused substantial property damage" as required for conviction of Risking Catastrophe. **Id.** at 14. This issue warrants no relief.

\*\*\*

In her second issue, Appellant asserts that her sentence is illegal because the court should have merged her convictions for Risking Catastrophe and REAP for sentencing purposes. Appellant's Br. at 34-37. When an appellant claims that her crimes should merge for sentencing purposes, she presents a question of law. **Commonwealth v. Edwards**, 256 A.3d 1130, 1136 (Pa. 2021). Accordingly, "our standard of review is *de novo*[,] and our scope of review is plenary." **Id.**

Merger of sentences "is appropriate only when two distinct criteria are satisfied: (1) the crimes arise from a single criminal act; and (2) all of the statutory elements of one of the offenses are included within the statutory elements of the other." **Commonwealth v. Raven**, 97 A.3d 1244, 1249 (Pa. Super. 2014); **see also** 42 Pa.C.S.§ 9765. The Supreme Court recently clarified that Section 9765's merger analysis "begins and ends with the statutory elements of each offense" and, thus, "does not require an evaluation of the specific facts [of the case] as applied to the elements." **Edwards**, 256

A.3d at 1137. "Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense." 42 Pa.C.S.§ 9765.

Turning to the elements of the crimes at issue, the General Assembly has defined REAP as follows:

> A person commits a misdemeanor of the second degree if [s]he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.

18 Pa.C.S. § 2705. As set forth above, the Crimes Code defines Risking Catastrophe as follows:

> A person is guilty of a felony of the third degree if [s]he recklessly creates a risk of catastrophe in the employment of fire, explosives or other dangerous means listed in subsection (a) of this section.

*Id.* at § 3302(b). The "other dangerous means listed in subsection (a)" include the following: "explosion, fire, flood, avalanche, collapse of building, release of poison gas, radioactive material or other harmful or destructive force or substance, or by any other means of causing potentially widespread injury or damage[.]" *Id.* § 3302(a).

As stated, Appellant claims that the trial court imposed an illegal sentence when it failed to merge her convictions for REAP and Risking Catastrophe for sentencing purposes. Appellant's Br. at 34-37. Specifically, Appellant asserts that the Commonwealth employed the same underlying facts—her driving into the occupied museum—to support its claim that she both risked "widespread injury to persons inside the building," for purposes of proving Risking Catastrophe, and that she "placed the persons present therein

in danger of serious bodily injury or death," for purposes of proving REAP. *Id.* at 36. Based on this overlapping proof, she claims that her sentences should have merged. *Id.* at 36-37. Appellant, however, ignores the Supreme Court's direction in *Edwards* and instead focuses her analysis on the application of the "facts and circumstances" of her case to the statutory elements, rather than determining whether all the statutory elements of one crime are encompassed by the other.

Applying the correct analysis, the trial court observed that, while both crimes "broadly apply to reckless conduct that creates a risk of harm[,]" each crime requires an element not included in the other crime. Trial Ct. Op. and Order at 26. Specifically, Risking Catastrophe requires conduct that creates a "risk of catastrophe" through the employment of "dangerous means," which are "capable of causing potentially widespread injury or damage," whereas REAP is focused on an injury to an individual, without requiring "dangerous means." *Id.* Likewise, REAP "entails potential death or serious bodily injury to a person[,]" whereas Risking Catastrophe does not require bodily injury, as it also includes property damage. *Id.* Because each crime includes elements not incorporated into the other crime, we affirm the trial court's conclusion that the crimes do not merge for sentencing purposes. Accordingly, neither of Appellant's claims warrants relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>3/21/2025</u>