[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-11137

_____

D.C. Docket No. 3:13-cr-00047-MMH-JBT-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MELVIN HUBERT HOLMES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 25, 2016)

Before MARTIN and ROSENBAUM, Circuit Judges, and PROCTOR,[*] District
Judge.

_____

[*] Honorable R. David Proctor, United States District Judge for the Northern District of
Alabama, sitting by designation.

PROCTOR, District Judge:

Melvin Hubert Holmes appeals his convictions and sentences for one count of production or attempted production of child pornography in violation of 18 U.S.C. § 2251(a) and one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B).  Holmes was charged with surreptitiously videotaping his teenage stepdaughter performing her daily bathroom routine over a period of approximately five months, and being in possession of videos and depictions of her in the nude.  The jury returned a guilty verdict as to both counts.  The District Court sentenced Holmes to 180 months in prison on the production and attempted production count (Count One), and 120 months in prison on the possession count (Count Two), with those sentences to be served concurrently.  In this appeal, Holmes argues (as he did before the District Court) that the subject images do not constitute child pornography because they do not depict a minor engaged in "sexually explicit conduct" as defined by 18 U.S.C. § 2256(2)(A).  After careful review, and with the benefit of oral argument, we disagree.  Accordingly, we affirm the decision of the District Court and hold that depictions of otherwise innocent conduct by a minor can constitute "a lascivious exhibition of the genitals or pubic area" based on the actions of the individual creating the depiction.

2

I.

A grand jury indicted Holmes for one count of production of child pornography, in violation of 18 U.S.C. § 2241(a) and (e) ("Count One"); and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2) ("Count Two"). Count One alleged that Holmes knowingly employed, used, persuaded, induced, enticed, and coerced a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. That count also alleged an attempt charge—i.e., that Holmes attempted to employ, use, persuade, induce, entice, and coerce a minor for that same purpose. Count Two charged that Holmes possessed child pornography.

At trial, the government called Yolanda Holmes ("Yolanda"), Holmes's wife. Yolanda testified that she lived with her minor daughter, Q.H., at a home they shared with Holmes at the time the recordings at issue in this case were made. Holmes and Yolanda had been married for eight years; Q.H. is Holmes's stepdaughter.

On August 23, 2012, Yolanda was at home cleaning house while her daughter was at school. Holmes was running an errand and not home at the time. While Yolanda was cleaning her daughter's bathroom, she discovered clay or putty stuck to the underside of the vanity, and noticed tape on a plaque above a full-

3

length mirror on the wall opposite the vanity. Sensing something was amiss, she decided to check Holmes's computer.

When Yolanda opened Holmes's laptop, she was able to access his electronic files.[1] She looked at files that had been recently viewed; those files appeared to be work-related based on their titles. However, when Yolanda clicked on one of the files, she saw an image of her daughter naked in the bathroom. Yolanda clicked on another recently-viewed file, and saw a cropped image of one of her daughter's naked body parts. She then clicked on a video file, and she saw a video of her daughter in the bathroom undressing and going through her morning routine to get ready for school. At that point, Yolanda stopped. She testified she could not believe what she was seeing, and decided to record the names of the files on the computer for future reference. After doing so, she closed Holmes's computer.

Holmes returned home later that day, but Yolanda did not mention her recent discovery. Yolanda arranged for her daughter to spend the night at a friend's house, and after Holmes left for work, Yolanda called the police and notified them that she had found images of her naked daughter on her husband's computer. She requested that the police come to the house to view the images.

---

[1] Holmes's laptop was normally password protected, but on this particular day Yolanda gained access without entering a password.

Once the police arrived, Yolanda showed them the bathroom area. A number of law enforcement agents testified at trial regarding what they discovered in connection with their inspection of the Holmes's residence.[2] For example, the police discovered areas in the bathroom where holes had been drilled. They also found a doll that sat on the windowsill of the bathroom. There was duct tape under the doll's dress and two holes had been cut into the front of the doll's dress.

The Government called Special Agent Scot Huntsberry, an agent with the Federal Bureau of Investigation ("FBI") and an expert in computer forensics. On the night of the search, Yolanda agreed to turn her husband's computer over to the police. At trial, Yolanda identified a number of discs containing photographs or

---

[2] For example, the Government called Detective Ryan Ellis, who testified that he responded to Yolanda's call and spoke with her. Upon entering the daughter's bathroom, he observed that a hole had been drilled through the trim work underneath the vanity where the sink met the wall at approximately waist height. The hole appeared to have been puttied over or covered up.

The Government also called Erin Thompson, a crime scene technician with the Clay County Sheriff's Office, who testified that she went to the Holmes's residence to collect evidence. The Government asked Thompson to identify Government's Exhibits 13, 14, 15, 16, and 17, which she described as photographs that showed the front side of the sink area in the daughter's bathroom where it appeared that some holes had been plastered over and stained. Thompson also identified Government Exhibits 18, 19, 20, and 21, which showed other areas of the daughter's bathroom where Yolanda believed that she had found plaster or holes that had been painted over. Neither Yolanda nor law enforcement ever recovered a camera from the Holmes's residence.

The Government also called Detective Johnny Hawkins, who testified that responsibility for the Holmes case was transferred to him from Detective Ellis. He testified that Yolanda had expressed concern about the possibility of other recording equipment in the house. When Detective Hawkins went to search the house again on August 31, 2012, he recovered more tape from below the sink area in the daughter's bathroom.

videos of her daughter naked in the bathroom.  The images and photographs that were on discs identified at trial were consistent with what she had viewed on her husband's computer on August 23, 2012.  All of the discs depicted Q.H., and these depictions appeared to have been surreptitiously captured in her bathroom. Huntsberry testified that he examined the hard drive of Holmes's computer. During that examination, Huntsberry viewed the contents of a folder entitled "Work" in the user directory "Big Mel."  He found a number of images and video files that were hidden—i.e., they were not discoverable by an ordinary computer user who opened that folder.[3]  Included in those hidden files were the images and videos of Q.H. in the nude while in her bathroom.

Based upon this and other evidence adduced at trial, a reasonable jury could conclude that beginning on March 10, 2012 (when Q.H. was fifteen years old) and ending on August 17, 2012 (when Q.H. was sixteen years old) Holmes hid video cameras in Q.H.'s bathroom in order to capture her daily routine without her knowledge.  She was videoed as she sang, danced, stood in front of the mirror,

---

[3] Government Exhibits 52 through 60 were discs that contained hidden video or image files taken from the hard drive of Holmes's laptop.  On cross-examination, Special Agent Huntsberry testified that it appeared an individual with access to the computer went to some lengths to hide these images and videos from other users who might access the computer.  Other than the subject video and images, he did not find any other child pornography on the hard drive or anywhere else on the computer.  Nor did he find any evidence to suggest that the images or videos had been distributed or e-mailed to other computers.  He did not find any file-sharing software on the computer, although such programs are common in child pornography investigations.

applied creams or lotions to her body, groomed, and performed other bathroom routines. A total of twenty-three videos depicting Q.H. were recovered. Fifteen of those videos were recorded with a camera hidden somewhere in the bathroom above countertop level. Those fifteen videos, which depicted Q.H. generally nude from the waist up, were discussed at trial, but not introduced.

Eight videos[4] were recorded with a video camera hidden under the lip of the vanity countertop. In those eight videos, Q.H. is seen completely naked, fully or partially clothed, or wearing a towel or her underwear. From time to time her nude pubic area is plainly visible in those videos. Those eight videos were introduced at trial.

Holmes also created twenty-six screen captures from certain sections of the videos. At trial, the Government introduced two of those screen captures depicting close-up views of Q.H.'s pubic area. The remaining still images which Holmes created (and which were not introduced at trial) depicted Q.H.'s naked breasts.

---

[4] All of these videos contained cuts where the time stamp had been edited out of the original recording. The videos were recorded by a camera placed in the front of the cabinet under the sink in Holmes's daughter's bathroom (directly at the level of her pubic area) while she was standing in front of the sink. Because there was a full-length mirror hanging on the opposite wall and a mirror above the sink, in addition to showing what was taking place in front of the camera, the camera also recorded images that were reflected by the opposite mirror and the mirror above the sink.

On September 17, 2013, the jury returned a verdict of guilty on both counts. Holmes renewed a motion for judgment of acquittal,[5] arguing that the videos and still images did not meet the statutory definition of child pornography. His motion was denied.

With respect to the charge that he produced child pornography, Holmes was sentenced to the mandatory-minimum sentence of fifteen years' imprisonment. He was sentenced to ten years' imprisonment on the charge that he possessed child pornography. The District Court ordered the two sentences to run concurrently. Holmes also received a five-year term of supervised release, a special condition of which required him to register with the state sex offender registration agency in any state where he is employed, resides, or works.

Holmes timely appealed his judgment of conviction.

## II.

We review *de novo* the denial of a defendant's properly-preserved motion for judgment of acquittal. United States v. Perez-Tosta, 36 F.3d 1552, 1556 (11th Cir. 1994) (per curiam). The District Court's denial of a motion for judgment of acquittal will be upheld "if a reasonable trier of fact could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt." United States v. Rodriguez, 218 F.3d 1243, 1244 (11th Cir. 2000). Of course, a District

---

[5] In the District Court, Holmes also moved for a new trial. That motion was also denied.

Court's "decision on sufficiency of the evidence is entitled to no deference by this [C]ourt." United States v. Taylor, 972 F.2d 1247, 1250 (11th Cir. 1992). However, in reviewing a District Court's decision on sufficiency, all facts and inferences are viewed in the light most favorable to the government. United States v. Hanson, 262 F.3d 1217, 1236 (11th Cir. 2001) (per curiam).

## III.

Federal law defines "child pornography" as "any visual depiction, including any photograph, film, video, picture, or computer or computer generated image or picture" where "the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct." 18 U.S.C. § 2256(8). A defendant commits the crime of production of child pornography when he uses, persuades, entices, or coerces a minor to engage in "sexually explicit conduct for the purpose of producing any visual depiction of such conduct" using materials that have traveled in interstate commerce. Id. § 2251(a). The crime of possession of child pornography involves the knowing possession of a visual depiction that involves a minor engaging in sexually explicit conduct. Id. § 2252(a)(4)(B). "Sexually explicit conduct" is defined by the statute as:

    (i)     sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

    (ii)    bestiality;

    (iii)   masturbation;

9

(iv)    sadistic or masochistic abuse; or

(v)    lascivious exhibition of the genitals or pubic area of any person.

Id. § 2256(2)(A).

The question presented here is whether the statutory phrase "lascivious exhibition of the genitals or pubic area" may include depictions of the "otherwise innocent" conduct of a minor which are surreptitiously taken by an alleged producer and made lascivious based upon the actions of the producer, not the child.

We have previously defined "lascivious exhibition" as one that "excites sexual desires or is salacious." United States v. Grzybowicz, 747 F.3d 1296, 1305–06 (11th Cir. 2014) (quotations and brackets omitted; quoting United States v. Williams, 444 F.3d 1286, 1299 (11th Cir. 2006), reversed on other grounds, 553 U.S. 285, 128 S. Ct. 1830 (2008)). In Grzybowicz, the visual depictions were blatantly lascivious.[6] That is, the depictions in that case salaciously excited sexual desires, and it was unnecessary for the panel to further analyze the phrase "lascivious exhibition of the genitals or pubic area." Id. at 1306. As we have acknowledged, what constitutes a forbidden lascivious exhibition "is not concrete," and for this reason it is necessary to determine the potentially lascivious nature "with respect to the actual depictions themselves." Williams, 444 F.3d at 1299

---

[6] In Grzybowicz, the minor's vagina was the focal point of all four pictures at issue, and in two of them the defendant spread and then digitally penetrated the minor's vagina. 747 F.3d at 1305–06. Accordingly, it "would have been unreasonable and utterly contrary to the evidence" for the jury to have found that the images were not lascivious. Id. at 1306.

10

("While the pictures needn't always be 'dirty' or even nude depictions to qualify, screening materials through the eyes of a neutral factfinder limits the potential universe of objectionable images."); see also United States v. Smith, 459 F.3d 1276, 1296 n. 17 (11th Cir. 2006) ("That the photographs of the victim were found with other sexually explicit photographs could make it more likely that their purpose was to elicit a sexual response."). Here, Holmes contends the images depict "mere nudity," making him at most a voyeur. And based upon his contention that the images do not depict a "lascivious exhibition of the genitals or pubic area," Holmes argues he cannot be guilty of producing, attempting to produce, or possessing child pornography.

In support of his argument, Holmes notes that Q.H. did not knowingly engage in sexually explicit conduct while she was being videoed. Rather, she was secretly recorded while in her bathroom performing normal, everyday activities. Holmes contends that it necessarily follows that the videos and pictures themselves, even the ones in which Q.H.'s pubic area is fully visible, do not depict sexually explicit conduct. We disagree. In doing so, we join each of our sister circuits who have addressed this issue and concluded that depictions of otherwise innocent conduct may in fact constitute a "lascivious exhibition of the genitals or pubic area" of a minor based on the actions of the individual creating the depiction.

11

The Eighth, Ninth, and Tenth Circuits have each confronted this same question.  In considering whether an image constitutes a lascivious exhibition, those courts have looked to the intent of the producer or editor of an image.  For example, in United States v. Horn, 187 F.3d 781 (8th Cir. 1999), the court held that "[b]y focusing the viewer's attention on the pubic area, freeze-framing can create an image intended to elicit a sexual response in the viewer.  The 'lascivious exhibition' is not the work of the child, whose innocence is not in question, but of the producer or editor of the video."  Id. at 790; see also United States v. Johnson, 639 F.3d 433, 440–41 (8th Cir. 2011) (holding that a reasonable jury could find that videos of minors weighing themselves in an examination room constitute lascivious exhibitions based on how the video was recorded, how the zoom feature was adjusted, and the producer's intent to elicit a sexual response in the viewer, even though the victims did not act in a sexual manner).

Similarly, the Ninth and Tenth Circuits have focused on the intent of the producer.  The Ninth Circuit has made clear that the image at issue may be a lascivious exhibition based on how the photographer arranges it.  "Each of the pictures featured the child photographed as a sexual object. … [T]hat is, so presented by the photographer as to arouse or satisfy the sexual cravings of a voyeur."  United States v. Wiegand, 812 F.2d 1239, 1244 (9th Cir.) (emphasis added), cert. denied, 484 U.S. 856, 108 S. Ct. 164 (1987).  The court continued,

explaining, "[L]asciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or like-minded pedophiles." Id.

The Tenth Circuit has also reached this same conclusion. Citing the Ninth Circuit's decision in Wiegand, that court concluded that "[t]o find otherwise would ignore the obvious exploitive nature of the depiction and require the child to exhibit lust, wantonness, sexual coyness or other inappropriate precocity. Such an interpretation would pervert both the language and the logic of the legislation and the case law." United States v. Wolf, 890 F.2d 241, 246 (10th Cir. 1989).

Today, we join the Eighth, Ninth, and Tenth Circuits and hold that a lascivious exhibition may be created by an individual who surreptitiously videos or photographs a minor and later captures or edits a depiction, even when the original depiction is one of an innocent child acting innocently. Viewing the evidence in the light most favorable to the government, a reasonable jury could have found that Holmes's conduct -- including placement of the cameras in the bathroom where his stepdaughter was most likely to be videoed while nude, his extensive focus on videoing and capturing images of her pubic area, the angle of the camera set up, and his editing of the videos at issue -- was sufficient to create a lascivious exhibition of the genitals or pubic area. See 18 U.S.C. § 2256(2)(A)(v); Grzybowicz, 747 F.3d at 1305–06; see also United States v. Ward, 686 F.3d 879,

13

882–84 (8th Cir. 20912) (reasonable jury could conclude that video taken with hidden camera depicting 12-year-old girl undress, step into and out of shower, and dry off constituted a lascivious exhibition of the pubic area).

Accordingly, for all these reasons, we **AFFIRM**.[7]

---

[7] Because we hold that a reasonable jury could have found Holmes guilty of the substantive offense of production of child pornography, we need not address the issue of whether his conviction on this count can be sustained on an alternative attempt theory.