[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 17-10659; 18-11234
Non-Argument Calendar

_____

D.C. Docket No. 3:15-cr-00083-BJD-PDB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LAMAR IVORY,
a.k.a. Thug Life,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(August 28, 2019)

Before JORDAN, JILL PRYOR and BLACK, Circuit Judges.

PER CURIAM:

Lamar Ivory appeals his conviction and sentence for possession of a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).  He contends the district court erred in denying his motion for a judgment of acquittal as there was insufficient evidence for the jury to conclude that he ever had possession of a firearm.  On the same grounds, he asserts the district court abused its discretion in denying his motion for a new trial.  He also challenges his status as an armed career criminal under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), arguing his prior conviction for armed robbery under Fla. Stat. § 812.13(2)(a) does not qualify as a violent felony.  Finally, he asserts the district court abused its discretion in denying his Rule 33 motion for a new trial based on newly discovered evidence about a Government witness and the Government's failure to disclose that evidence in violation of its obligation under *Brady*.[1]  After review, we affirm the district court.

## I.  DISCUSSION

### A.  *Judgment of Acquittal*

To convict a defendant under 18 U.S.C. § 922(g)(1), the Government must prove that: (1) the defendant was a felon; (2) the defendant knowingly possessed a firearm; and (3) the firearm affected or was placed in interstate commerce.  *United States v. Beckles*, 565 F.3d 832, 841 (11th Cir. 2009).  Possession may be proved

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

2

through actual or constructive possession. *Id.* The Government may show constructive possession through direct or circumstantial evidence that the defendant exercised ownership, dominion or control over the firearm. *Id.* However, a defendant's mere presence near the firearm or awareness of it is not sufficient. *Id.*

The district court did not err in denying Ivory's motion for a judgment of acquittal. *See United States v. Holmes*, 814 F.3d 1246, 1250 (11th Cir. 2016) (reviewing *de novo* the denial of a defendant's properly-preserved motion for a judgment of acquittal and stating the denial of a motion for judgment of acquittal will be upheld if a reasonable trier of fact could conclude the evidence at trial established the defendant's guilt beyond a reasonable doubt). Drawing all inferences in favor of the Government, the Government presented its version of events largely through the consistent testimony of Alyssa Weber and Tomislav Golik. *See id.* (explaining on review, we draw all facts and inferences in the light most favorable to the Government). Through their testimony, the jury could have reasonably concluded that Ivory had first acquired the gun from Golik two weeks prior to Ivory's arrest. Testimony from Golik and Carrie Topoulos showed that Golik was the original owner of the weapon and pawned it. Golik and Ivory both testified that Golik bought drugs consistently from Ivory and Golik redeemed the pistol from the pawn shop on April 17, 2015. Golik testified that Ivory took the

gun "for protection." Ivory's own testimony confirmed that most drug dealers carry weapons for protection, and he admitted he sold large amounts of crack cocaine. Golik stated Ivory carried the gun consistently in the weeks leading up to Ivory's arrest. Based on this testimony, the jury could have concluded that Ivory actually possessed the firearm from April 17 until his arrest. *See Beckles*, 565 F.3d at 841.

The jury could have inferred from Weber's testimony that Ivory then had the gun in his possession on the night of the arrest. According to Weber, Ivory picked her up in his car. When police stopped the car, Ivory attempted to make Weber take the gun. When she refused, Ivory put it in the glove compartment. Ivory then exited the car quickly from the front passenger seat, the seat closest to the gun's location, to avoid police. When Sergeant Jason Bailey searched the car, he found the pistol in the glove compartment, outside of the case, matching Weber's testimony the gun was outside of the case when Ivory asked her to take it. The Government's evidence was sufficient for the jury to infer that Ivory had actual possession of the gun at multiple points and constructive possession while it was in the glove compartment. *See id.*

Ivory's arguments on appeal principally concern issues of credibility, the province of the jury. *See United States v. Garcia-Bercovich*, 582 F.3d 1234, 1238 (11th Cir. 2009) (stating credibility issues are the province of the jury, and we

4

assume that the jury resolved all such questions in a manner supporting their verdict). Ivory focuses significantly on Weber's and Golik's drug abuse and related criminal histories as impeachment evidence. Although the record contained considerable evidence impeaching Weber's and Golik's character—including years of crack cocaine abuse and many instances of untruthfulness—their testimony was based on first-hand knowledge and was consistent with the testimony of Topoulos, Officer Daniel Gaynor, and Sergeant Bailey about the original ownership of the gun, Ivory's actions when stopped, and the condition of the gun when it was found. Weber's account of the events surrounding her and Ivory's arrests was based entirely on her perception, even though she admitted being under the influence. Golik's testimony was grounded in his multiple dealings with Ivory over several weeks, including Ivory's taking of the gun. Although the jury was free to disbelieve Weber and Golik, none of their testimony presented facts showing an impossible perception of interpretation of the events sufficient to be incredible as a matter of law. *See United States v. Flores*, 572 F.3d 1254, 1263 (11th Cir. 2009) (stating generally, testimony is only incredible as a matter of law if the testimony cannot be believed on its face, such as if the witness could not have observed certain events or the events are contrary to the laws of nature, and the fact a witness has questionable character does not, by itself, render testimony incredible).

To the extent Ivory urges this Court to adopt his version of events, the jury's verdict shows it rejected Ivory's testimony. *See United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995) (stating if a defendant testifies in his own defense, the jury is free to disbelieve that testimony and consider those statements as substantive evidence of guilt). Reviewing the record *de novo*, there was ample evidence for a reasonable factfinder to conclude that Ivory possessed a firearm on April 30, 2015.

B. *Motion for New Trial-Weight of the Evidence*

On a motion for a new trial based on the weight of the evidence, the district court need not view the evidence in the light most favorable to the verdict, but instead may weigh the evidence and consider the credibility of the witnesses. *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir. 1985). In order for a new trial to be granted, "[t]he evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand. *Id.* at 1313. Motions for new trial based on the weight of the evidence are to be granted "sparingly and with caution," and should occur only in "really exceptional cases." *Id.* Courts have granted motions for new trials based on the weight of the evidence only where the credibility of the Government's witnesses has been impeached and the Government's case has been marked by uncertainties and discrepancies. *Id.*

The district court did not abuse its discretion in denying Ivory's motion for new trial. *See id.* at 1312 (reviewing the district court's denial of a motion for a new trial for abuse of discretion). As discussed above, the Government presented sufficient evidence from which a jury could have concluded that Ivory exercised both actual and constructive possession over the firearm found in the car. The Government's case depicted a consistent version of the facts: (1) Ivory obtained the gun from Golik before April 30, (2) Ivory had the gun on April 30 in the car, and (3) Ivory placed the gun in the glove compartment when Weber pulled the car into the gas station. Significantly, Weber testified that she had never met Golik, and Golik never testified that he was present on April 30, which conflicted with Ivory's account that they picked up Golik on the side of the road and that Golik must have put the gun in the glove compartment. Although Ivory presented a plausible version of the events that night, Ivory could provide no explanation why he stopped at the gas station, other than to avoid the police. Ivory also admitted that most drug dealers carry firearms for protection—which Golik testified was the reason he saw Ivory take the gun—and that he was in fact a drug dealer.

Although Ivory spent a significant portion of the trial impeaching the Government's two key witnesses, each key witness had significant flaws. For the Government, Weber and Golik were both recovering addicts and former customers of Ivory who were testifying to obtain a better sentence for their own offenses. On

7

the other hand, Ivory was an admitted drug dealer and convicted felon.  Moreover, each witness had lied to police and violated plea agreements or terms of probation in the past.

Overall, the credibility of the Government's witnesses was not so fundamentally flawed to justify a new trial.  In contrast, Ivory failed to support his own account with other evidence, and his own credibility was significantly impeached.  Even reweighing the credibility of the witnesses based on the record, this case does not present any unusual circumstances that mandate a new trial.  *See id.*

## C.  ACCA

In *Stokeling*, which was decided after Ivory filed his appeal, the Supreme Court held Florida's robbery statute "had as an element the use, attempted use, or threatened use of physical force against the person of another."  *Stokeling v. United States*, 139 S. Ct. 544, 554 (2019).  The Court reasoned that, "[b]ecause the term 'physical force' in [the] ACCA encompasses the degree of force necessary to commit common-law robbery, and because Florida robbery requires that same degree of 'force,' Florida robbery qualifies as an ACCA-predicate offense under the elements clause."  *Id*. at 555.  This forecloses Ivory's argument that his armed robbery conviction does not qualify as a violent felony under the ACCA.

8

*D.  Motion for New Trial-New Evidence*

Federal Rule of Criminal Procedure 33(b) authorizes a district court to grant a new trial based on new evidence only if the following test is satisfied: (1) the evidence was discovered after trial; (2) the failure to discover the evidence was not due to a lack of due diligence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that a new trial probably would produce a different result.  *United States v. Jernigan*, 341 F.3d 1273, 1287 (11th Cir. 2003).  A failure to meet any one of these elements is fatal to a motion for a new trial based on newly discovered evidence.  *United States v. Lee*, 68 F.3d 1267, 1274 (11th Cir. 1995).  Such motions are highly disfavored, and district courts should use great caution in granting them.  *Jernigan*, 341 F.3d at 1287.

In a motion for a new trial based on evidence that was allegedly suppressed in violation of *Brady*, a defendant must show: (1) the Government possessed favorable evidence to the defendant, including impeachment evidence; (2) the defendant did not possess the evidence and could not have obtained it with any reasonable diligence; (3) the Government suppressed the favorable evidence; and (4) had the evidence been disclosed to the defendant, there is a reasonable probability the outcome would have been different.  *United States v. Vallejo*, 297

F.3d 1154, 1164 (11th Cir. 2002); *see also United States v. Hansen*, 262 F.3d 1217, 1234 (11th Cir. 2001).

First, the district court did not abuse its discretion by denying Ivory's motion for a new trial based on newly discovered evidence because a new trial may not be awarded based on new evidence that is merely impeaching. *See Vallejo*, 297 F.3d at 1163 (reviewing for an abuse of discretion the district court's denial of a motion for a new trial based on newly discovered evidence); *Jernigan*, 341 F.3d at 1287; *Lee*, 68 F.3d at 1274. Second, the district court did not abuse its discretion by denying Ivory's motion for new trial based on a *Brady* violation. Although Ivory likely could not have obtained the information about Golik's relationship with a drug dealer with reasonable diligence, there is not a reasonable probability that the outcome of the trial would have been different had the Government disclosed the information. *See Vallejo*, 297 F.3d at 1164. Ivory failed to articulate how Golik's cooperation in the prosecution of the drug dealer would have provided any information upon which Golik, who was thoroughly cross-examined, had not already been examined or impeached. Further, Golik's testimony regarding Ivory's possession of the gun was corroborated by the testimony of two other witnesses. Accordingly, the district court did not abuse its discretion.

## II.  CONCLUSION

We affirm Ivory's conviction and sentence.

**AFFIRMED.**