J-S39019-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| WAYNE FRANKLIN BENSON, JR. | : | |
| Appellant | : | No. 468 MDA 2022 |

Appeal from the Judgment of Sentence Entered October 11, 2021
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s):  CP-41-CR-0000829-2020

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and NICHOLS, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED MARCH 09, 2023**

Appellant, Wayne Franklin Benson, Jr., appeals from the judgment of sentence of 16 to 32 months of incarceration and a consecutive three-year period of probation imposed following his convictions for a series of crimes all arising out of his surreptitious photographing of his underage stepdaughter while she used the bathroom.  After careful review, we discharge Appellant's conviction for obscenity, affirm all other challenged convictions, and remand for resentencing as our decision disrupts the sentencing scheme.

The victim, G.B., lived with her mother, brother, and Appellant, who was her stepfather.  Appellant and G.B.'s mother married in 2008, when G.B. was approximately three years old.  At some unspecified time on the evening of June 23, 2020, G.B. went to use the bathroom located across from her bedroom.  G.B., who was then 14 years old, was wearing pink shorts and a gray top.  She pulled her pants and underwear down, partially exposing her

vagina. While using the toilet, G.B. saw flashes of light coming from the linen closet. G.B. saw that the closet door was open and discovered a phone, which she recognized as Appellant's. G.B. opened the phone's camera application and saw several photographs of her using the toilet. She then deleted the pictures. As G.B. offered the only evidence regarding the photographs, we quote her description of the events:

> Q. Okay, do you recall what you were wearing?
>
> A. Yes. I was wearing pajamas; pink shorts and a gray top.
>
> Q. So when you went into the bathroom that night, did you have to pull down your pants?
>
> A. Yes.
>
> Q. Did you remove anything else?
>
> A. I removed my underwear.
>
> Q. Okay, and then you proceeded to use the toilet?
>
> A. Yes.
>
> Q. Okay. When you removed your underwear and your pants, what part of your body, if at all, was exposed?
>
> A. My shirt covered most of it, but some of my vagina was showing.
>
> Q. Okay. When you went to the bathroom[,] did you notice anything in the – across from the toilet?
>
> A. I noticed flashing.
>
> *  *  *
>
> Q. And when you picked up the phone did you see anything on the phone?
>
> A. Yes.
>
> Q. What did you see?

A. I saw about nine pictures of me going to the bathroom.

Q. Okay. What did you do at that point?

A. I went back to my room.

Q. Did you do anything to the phone before you went back to your room?

A. Yes, I deleted the pictures.

N.T., 6/23/21, at 31-33.

G.B. immediately informed her maternal grandparents, who visited the home shortly thereafter. Appellant acquiesced to G.B.'s grandfather's demand that Appellant turn over his cellphone. The phone was subsequently turned over to the Pennsylvania State Police.

Corporal Christopher Hill extracted the phone's data and performed a forensic search but could not recover the images deleted by G.B. Corporal Hill determined that Appellant's phone activated the camera application seventeen times on June 23, 2020, with the last occurring at 10:00 p.m. Corporal Hill recovered an image taken on the day of the incident, showing Appellant touch his watch. Corporal Hill testified that an Apple iWatch can access the phone's camera application, and the image's metadata showed that the image was taken via Appellant's iWatch.

The Commonwealth also called Corporal Tyler Morse, who interviewed Appellant while he and another trooper transported Appellant from a mental health facility to a Pennsylvania State Police barracks.[1] While riding in the

_____

[1] Appellant had been involuntary committed due to admissions that he had attempted suicide.

backseat with Appellant, Corporal Morse issued *Miranda*[2] warnings, and Appellant agreed to speak. Appellant admitted that he placed his phone in the linen closet and used his iWatch to take pictures of G.B. while she used the bathroom. He stated that "this was the only time he ever tried to photograph the victim when she did not have clothing on." N.T., 6/23/21, at 81. The police vehicle recorded the conversation and an audio recording of Appellant's statements was played to the jury.

The Commonwealth charged Appellant with six total counts, one of which was withdrawn. The jury convicted Appellant of the remaining five counts.[3]

On October 11, 2021, the trial court sentenced Appellant to an aggregate term of 16 to 32 months of incarceration followed by three years of probation. Appellant filed a timely post-sentence motion on October 20, 2021. The trial court did not issue an order during the 120-day period, which expired on February 17, 2022. Pa.R.Crim.P. 720(B)(3)(a). Thus, the motion should have been denied by operation of law on that date, as the docket does not reflect that the court issued an order granting the permitted one-time extension of thirty days. Pa.R.Crim.P. 720(B)(3)(b-c). Appellant filed a

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] Count one: 18 Pa.C.S. § 6312(b)(2) (photographing a minor performing a sexual act); count two: 18 Pa.C.S. § 6312(d) (possession of child pornography); count three: 18 Pa.C.S. § 7512 (criminal use of communication facility); count four: 18 Pa.C.S. § 5903(a)(3)(ii) (creating obscene material); count five: 18 Pa.C.S. § 7507.1(a)(1) (invasion of privacy).

protective notice of appeal on March 17, 2021, and on April 1, 2022, the trial judge signed an order purporting to deny the post-sentence motions. Appellant thereafter filed a notice of appeal from that order.[4]

Appellant filed a concise statement of matters complained of on appeal, and the trial court issued its opinion in response. The Commonwealth filed a letter stating it would not file a brief and chose to rest on the trial court opinion. Appellant raises the following issues for our review.

> I. Whether the evidence was insufficient as a matter of law to sustain [Appellant]'s two convictions for sexual abuse of children where the child was not engaged in any conduct constituting a prohibited sexual act or simulation where the evidence revealed only that the child was using the toilet and where no actual images were ever introduced into evidence?

> II. Whether the evidence was insufficient as a matter of law to establish that [Appellant] used a communication facility in the commission of a felony, since the evidence in those felony counts (counts [one] and [two]) were insufficient to support those convictions?

> III. Whether the evidence was insufficient as a matter of law to demonstrate beyond a reasonable doubt that the alleged photographs constituted obscene material as defined by the statute where the evidence revealed only that the child was briefly using the toilet and there was no evidence that her genitals were ever visible as she was seated and no actual images were introduced at trial?

> IV. Whether [Appellant] was denied his due process rights to a fair trial under both the United States and Pennsylvania constitutions where the Commonwealth improperly commented

_____

[4] We have deemed the failure to enter an order denying the post-sentence motion by operation of law as an administrative breakdown that excuses the untimely filing of the notice of appeal. *See Commonwealth v. Patterson*, 940 A.2d 493, 499 (Pa. Super. 2007). We therefore decline to quash the appeal.

multiple times on his right to remain silent after **Miranda** warnings were provided?

Appellant's Brief at 4 (unnecessary capitalization omitted).

The first issue challenges the sufficiency of the evidence to convict Appellant of counts one and two, which were graded as felonies. The second issue turns on the first, as count three criminalizes the use of a communication facility, which is defined to include a phone, to commit another felony. 75 Pa.C.S. § 7512. Thus, Appellant's second issue fails if the evidence was sufficient at counts one and/or two. **See** Appellant's Brief at 20 ("Here, the basis for this … charge, as set forth by the trial court in its instructions, was the commission of the felony crimes in [c]ounts [one] and [two.]").

Our standard of review is well-settled. Whether the evidence was sufficient to sustain the charge presents a question of law, and our standard of review is *de novo*, and our scope of review is plenary. **Commonwealth v. Walls**, 144 A.3d 926 (Pa. Super. 2016). We must determine:

> [W]hether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, [is] sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

***Commonwealth v. McCoy***, 199 A.3d 411, 414–15 (Pa. Super. 2018) (quoting ***Commonwealth v. Trinidad***, 96 A.3d 1031, 1038 (Pa. Super. 2014)).

Appellant asserts that the Commonwealth failed to present sufficient evidence concerning how the photographs depicted G.B.'s genitalia, thereby precluding his convictions for violating the following two separate subsections of Section 6312:

> **(b) Photographing, videotaping, depicting on computer or filming sexual acts.--**
>
> . . . .
>
> (2) Any person who knowingly photographs, videotapes, depicts on computer or films a child under the age of 18 years engaging in a **prohibited sexual act** or in the simulation of such an act commits an offense.
>
> . . . .
>
> **(d) Child pornography.--**Any person who intentionally views or knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a **prohibited sexual act** or in the simulation of such act commits an offense.

18 Pa.C.S. § 6312(b)(2), (d) (emphasis added).

Thus, the sole element at issue here is whether the Commonwealth presented sufficient evidence to satisfy the definition of "prohibited sexual act." That phrase is defined by subsection (g) as follows: "Sexual intercourse as defined in section 3101 (relating to definitions), masturbation, sadism, masochism, bestiality, fellatio, cunnilingus, lewd exhibition of the genitals or

nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction."  18 Pa.C.S. § 6312(g).

The first seven possibilities (sexual intercourse as separately defined, masturbation, sadism, masochism, bestiality, fellatio, or cunnilingus) are clearly not at issue.  Appellant limits his attack to the language "lewd exhibition of the genitals."  Appellant submits that "mere child nudity is not enough – because the phrase 'exhibition of the genitals' is qualified by the word 'lewd.'" Appellant's Brief at 14.  Thus, the Commonwealth was required to show that the pictures captured a lewd exhibition of G.B.'s genitals in order to sustain its convictions.  Appellant points out that the evidence on what the photographs depicted was limited to G.B.'s testimony that some of her vagina was showing.  Relatedly, because G.B. deleted the photographs, it is impossible to review what they depicted. *Id.*  Based on G.B.'s testimony, the pictures, at most, "showed her in the act of 'going to the bathroom.'  However, this much is unavoidable: the fact that G.B. may have even slightly appeared nude and her pubic area was briefly visible at times does not mean that the photos depicted her engaging in a prohibited sexual act[.]" *Id.* at 14-15.

Appellant's argument ignores the separate language concerning nudity. The natural interpretation of "or" is that it serves to offset each separate prohibited sexual act. *See generally In re Paulmier*, 937 A.2d 364, 373 (Pa. 2007) ("The word 'or' is defined as a conjunction 'used to connect words, phrases, or clauses representing alternatives.  In other words, 'or' is

disjunctive. It means one or the other of two or more alternatives.") (citation omitted). Here, the disjunctive "or" offsets "lewd exhibition of the genitals" from "nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction." Thus, the Commonwealth presented sufficient evidence to convict Appellant of counts one, two, and three if the material qualified as either a "lewd exhibition of the genitals" or nudity as defined. For the following reasons, we decline to conclude that the Commonwealth presented sufficient evidence that the photographs constituted a lewd exhibition of G.B.'s genitals for purposes of this statute. We thus credit that aspect of Appellant's argument. However, as our review is *de novo*, we find that the Commonwealth presented sufficient evidence that the depictions satisfied the nudity definition and therefore affirm the convictions at counts one, two, and three.

We briefly discuss some broad principles concerning the criminalization of child pornography, as these concepts are relevant to Appellant's conviction for obscenity. As a general matter, depictions of pornography are protected speech; it is only when the material is deemed "obscene" that a State may criminalize it.[5] "We have long held that obscene speech—sexually explicit material that violates fundamental notions of decency—is not protected by the First Amendment. But to protect explicit material that has social value, we

---

[5] We speak here, of course, only of statutes criminalizing pornography; the surreptitious recording or photographing of a person using the bathroom is also criminalized by other statutes, such as Appellant's unchallenged conviction for invasion of privacy.

have limited the scope of the obscenity exception, and have overturned convictions for the distribution of sexually graphic but nonobscene material. *See Miller v. California*, 413 U.S. 15, 23–24 (1973)." *United States v. Williams*, 553 U.S. 285, 288 (2008) (citation omitted). The *Miller* Court defined obscene material as "works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value." *Miller*, 413 U.S. at 24. Different First Amendment principles apply to sexual material where children are concerned. In *New York v. Ferber*, 458 U.S. 747 (1982), the United States Supreme Court held that material showing children engaged in sexual conduct could be criminalized even if that material was not obscene under the *Miller* standards. "As a general rule, pornography can be banned only if obscene, but under *Ferber*, pornography showing minors can be proscribed whether or not the images are obscene under the definition set forth in *Miller*[.]" *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 240 (2002).

It warrants mentioning that *Ferber* stated that there are "limits on the category of child pornography which, like obscenity, is unprotected by the First Amendment." *Ferber*, 458 U.S. at 764. A statute must adequately define the conduct to be prohibited, and "[t]he category of 'sexual conduct' proscribed must also be suitably limited and described." *Id.* The specific law at issue in *Ferber* was upheld because it

incorporates a definition of sexual conduct that comports with the above-stated principles. The forbidden acts to be depicted are listed with sufficient precision and represent the kind of conduct that, if it were the theme of a work, could render it legally obscene: "actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals." The term "lewd exhibition of the genitals" is not unknown in this area and, indeed, was given in *Miller* as an example of a permissible regulation.

*Ferber*, 458 U.S. at 765 (citation omitted).

The Section 6312(g) definition of prohibited sexual conduct largely tracks this approved list of "forbidden acts" that may be criminalized. And most of the items specified within Section 6312(g) are self-evidently sexual conduct that could be legally obscene. For example, fellatio or cunnilingus are straightforwardly sexual and require no explication. Determining what qualifies as a "lewd exhibition of the genitals," in contrast, is more difficult. *See, e.g.*, *United States v. Villard*, 885 F.2d 117, 121 (3d Cir. 1989) ("Congress did not expressly define 'lascivious exhibition of the genitals or pubic area,' one of the five types of prohibited 'sexually explicit conduct' listed in 18 U.S.C. § 2256(2). Whatever the exact parameters of 'lascivious exhibition,' we find it less readily discernable than the other, more concrete types of sexually explicit conduct listed in [S]ection 2256(2).").[6] Many courts have adopted the multi-factor test set forth by *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), a case involving a child pornography

---

[6] For our purposes, the two terms are synonymous. "A subsequent amendment, the Child Protection Act of 1984, replaced 'lewd' with the word 'lascivious,' but the two words have nearly identical meanings." *United States v. Knox*, 32 F.3d 733, 748 (3d Cir. 1994).

prosecution. Recognizing that "Congress intended that the standard be lower than that for obscenity, in line with the *Ferber* holding," the *Dost* Court established a non-exclusive multi-factor test. *Id.* at 832.

Here, we agree that the lack of detail regarding what the photographs showed makes it difficult, if not impossible, to determine whether they were lewd or lascivious, even putting aside the lack of a precedential definition of the phrase. "[W]hat constitutes a forbidden lascivious exhibition 'is not concrete,' and for this reason it is necessary to determine the potentially lascivious nature 'with respect to the actual depictions themselves.'" *United States v. Holmes*, 814 F.3d 1246, 1251 (11th Cir. 2016). There, the defendant "was charged with surreptitiously videotaping his teenage stepdaughter performing her daily bathroom routine over a period of approximately five months, and being in possession of videos and depictions of her in the nude." *Id.* at 1247. The *Holmes* Court determined that the material constituted a lascivious exhibition of the genitals based on the defendant's actions in creating the pictures. The panel acknowledged that the depictions might be "otherwise innocent" if made by the child, as its precedents have "defined 'lascivious exhibition' as one that 'excites sexual desires or is salacious.'" *Id.* at 1251 (citation omitted). However, "a lascivious exhibition may be created by an individual who surreptitiously videos or photographs a minor and later captures or edits a depiction, even when the original depiction is one of an innocent child acting innocently." *Id.* at 1252. The defendant placed cameras "in the bathroom where his

stepdaughter was most likely to be videoed while nude," and he "extensive[ly] focus[ed] on videoing and capturing images of her pubic area," and "his editing of the videos at issue … was sufficient to create a lascivious exhibition of the genitals or pubic area." *Id.*

We are unprepared to say whether the depiction of G.B. using the toilet would qualify as a lewd exhibition. First, the parties have not directed us to any Pennsylvania case addressing the definition of "lewd" in this statutory context, and we have not uncovered any. Second, even if we were inclined to ascertain what the phrase "lewd exhibition of the genitals" means, Appellant is surely correct that a "lewd exhibition" must mean more than a nude depiction. Otherwise, the "nudity" addition is superfluous. The "General Assembly intends the entire statute to be effective and certain." 1 Pa.C.S. § 1922(2). Accepting *arguendo* that a multi-factor test is appropriate, we simply have nothing to assess as the photographs were deleted.

Our conclusion in this regard does not vindicate Appellant, however, as he ignores the nudity language.[7] The definition of "prohibited sexual act" includes "nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction." *See* 18 Pa.C.S. § 6312(g). In *Commonwealth v. Savich*, 716 A.2d 1251 (Pa. Super. 1998),

---

[7] We note that the trial court instructed the jury that, for purposes of this case, "a prohibited sexual act means lewd exhibition of the genitals and/or nudity, if the nudity is depicted for the purpose of ... sexual stimulation or gratification of any person who might view" the material. N.T., 6/23/21, at 155.

- 13 -

we explained that, when the theory of the case involves the production of the material, it is proper to focus on the intent of the producer:

> It is the intent of the photographer with which we are concerned in this case. The standard employed is a subjective one, pertaining to the actor's state of mind and is therefore uniquely within the control of the potential offender. Such a standard provides an intrinsic element of notice, as the actor is also in a uniquely suitable position to know whether his purpose will coincide with that proscribed by the statute.
>
> [**Missouri v. Helgoth**, 691 S.W.2d 281, 283 (Mo. 1985)]. Persuaded by **Helgoth's** reasoning, we find that the videotaping of nude children for the purpose of one's own sexual gratification or stimulation is a prohibited act under 18 Pa.C.S.[] § 6312(a) ("prohibited sexual act" means "nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction").

**Id.** at 1256. **Cf. Holmes**, **supra** (adopting same intent test with respect to lewd exhibition under federal child pornography statute).

As in **Savich**, this case involves Appellant as the creator of the material, and Appellant does not argue that the Commonwealth failed to present sufficient evidence to conclude that his intent in photographing G.B. was for his own sexual gratification. Along these same lines, we add that our Supreme Court in **Commonwealth v. Davidson**, 938 A.2d 198, 213 (Pa. 2007), examined a void-for-vagueness challenge to Section 6312 and its prohibition of "nudity" in the context of possessing the materials. The Court explained that when it comes to nude images, "[a]ll that the Commonwealth must prove in a situation where a defendant is found in possession of nude images of children not engaged in any other prohibited sexual act under Section

6312(a), is that the nudity in the image is depicted for sexual stimulation or gratification." *Id.* Appellant concedes that the depictions constituted some level of nudity, and he does not argue any other element of the crimes. We therefore determine that there was sufficient evidence to sustain the convictions at counts one and two on these grounds. Consequently, Appellant's associated challenge to count three fails as well.

That said, our foregoing analysis demonstrates that Appellant has presented a compelling argument that the Commonwealth failed to produce sufficient evidence to uphold his conviction for obscenity, which he raises in his third issue. At count four, the Commonwealth charged Appellant with the following violation:

> **(a) Offenses defined.--**No person, knowing the obscene character of the materials or performances involved, shall:
>
> …
>
> (3) … (ii) design, copy, draw, photograph, print, utter, publish or in any manner manufacture or prepare any obscene materials in which a minor is depicted….

18 Pa.C.S § 5903(a)(3)(ii).

As indicated by the statutory language, the material must be "obscene," and the statute adopts the aforementioned *Miller* standard. Material is obscene if:

> (1) the average person applying contemporary community standards would find that the subject matter taken as a whole appeals to the prurient interest;
>
> (2) the subject matter depicts or describes in a patently offensive way, sexual conduct of a type described in this section; and

- 15 -

(3) the subject matter, taken as a whole, lacks serious literary, artistic, political, educational or scientific value.

18 Pa.C.S § 5903(b). "Sexual conduct" is separately defined as follows:

Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, including sexual intercourse, anal or oral sodomy and sexual bestiality; and patently offensive representations or descriptions of masturbation, excretory functions, sadomasochistic abuse and lewd exhibition of the genitals.

*Id.*

Because this statute incorporates the **Miller** obscenity test, Section 5903 does not refer to the child pornography exception established by **Ferber**. Thus, the acts criminalized here are the production of obscene material within the meaning of the **Miller** standard. Accordingly, our previous discussion regarding the uncertainty of what "lewd" means applies with even stronger force here because the statute criminalizes the production of obscene material, not material subject to the child pornography exception.

We agree with Appellant that the Commonwealth failed to establish sufficient evidence of lewd exhibition of G.B.'s genitals. The evidence, when taken in the light most favorable to the fact-finder, warrants the inference that the photographs depicted nudity. Nudity is not enough under the obscenity statute. **Commonwealth v. Lebo**, 795 A.2d 987 (Pa. Super. 2002). In **Lebo**, this Court discharged obscenity convictions. The appellant owned a photography studio and hired young women as models for photos he hoped to sell in calendars and magazines. **Id.** at 989. The police learned that some of the models may have been underage, and pursuant to a search warrant,

- 16 -

seized hundreds of photographs. The ***Lebo*** Court divided the material "into three categories: those where the model is clothed; those where the model is partially clothed, usually with the breasts exposed; and those where the model is completely nude." ***Id.*** at 992. None of the photographs depicted a lewd exhibition of the genitals, as "the few nude photographs are simply standing nudes." ***Id.*** "The models are not posed in overtly sexual or lewd poses, their legs are together, and their genitals are not visible." ***Id.*** As the Commonwealth in the case *sub judice* relies on the trial court opinion's treatment of this issue, we quote the trial court's analysis of ***Lebo***:

> While there are no allegations that the photographs of the victim depicted her in ultimate sexual acts or other representations defined by the statute, the victim testified that her vagina was visible when she was photographed as she sat down to use the toilet. This fact distinguishes the present case from that of [***Lebo***], wherein the [a]ppellant's conviction for obscene and other sexual materials was reversed because the nude models were "not posed in overtly sexual or lewd poses, their legs [were] together, and their genitals [were] not visible." The photos taken of the minor victim in a private moment where her vagina would necessarily be exposed met the definition of obscenity as contained in the statute and said photos lacked any serious literary, artistic, political, educational, or scientific value.

Trial Court Opinion, 6/2/22, at 5.

We respectfully disagree. The ***Lebo*** Court's reference to the absence of visible genitalia was, in our view, little more than an acknowledgement that the material was not even plausibly lewd. The display of genitals is surely a necessary condition given the phrase itself requires a depiction of genitals but it is not a sufficient one. Moreover, the ***Lebo*** Court's discussion of specific

qualities of the photographs, for example the manner in which the models were posed, supports Appellant's contention that the absence of the actual photographs and the lack of testimony regarding the depictions makes this task virtually impossible. G.B.'s testimony establishes that the pictures showed little more than G.B. using the toilet in a normal manner, which is a setting not typically associated with sexual activity. We do not doubt that certain arrangements or editing can transform an "innocent" nude depiction into a lewd one. **See***, **e.g.***, **United States v. Horn**, 187 F.3d 781, 790 (8th Cir. 1999) (holding that depiction of nude children playing on a jungle gym was lascivious because the appellant "freeze-framed at moments when their pubic areas are most exposed, as, for instance, when they are doing cartwheels; and these areas are at the center of the image and form the focus of the depiction"). However, the evidence presented to the jury did not enable a rational inference that the pictures qualified as a lewd exhibition as required by **Miller**. The only firm description that we have of the photographs is that they depicted parts of G.B.'s vagina/pubic area and showed her going to the bathroom. Perhaps the result would be different if Appellant, for example, zoomed in on the visible portion of G.B.'s genitals, but there is no evidence of that here. We therefore discharge Appellant's conviction at this count. As the trial court sentenced Appellant at this count, our discharge disrupts the sentencing scheme, and we must remand for resentencing.

Appellant's final claim concerns two purported references to Appellant's right to remain silent. As previously stated, Appellant was given **Miranda**

warnings and did not file a motion to suppress the statements. Appellant elected to testify and was asked on cross-examination if he understood that he did not have to answer the trooper's questions. Appellant claims, with little elaboration, that a question clarifying that he chose to give up his right to remain silent violated his right to remain silent. Appellant also does not account for the fact that he chose to testify. **See Commonwealth v. Molina**, 104 A.3d 430, 447 (Pa. 2014) (explaining that "the prosecution may impeach the testifying defendant with his prior statements, actions, or silence, regardless of whether the statements, actions, or silence occurred prior to or after the reading of **Miranda** rights or the defendant's arrest, if the defendant waives his right against self-incrimination by testifying"). The second reference came during closing argument, when the prosecutor argued that an innocent person would not give incriminating statements.[8]

Appellant failed to preserve these claims, as he acknowledges that counsel failed to object. Appellant's Brief at 27 ("At no time did trial counsel object to this questioning on the basis that it violated [Appellant]'s Fifth Amendment right to remain silent."); **id.** at 28 (referencing closing argument; "Once again, no objection was ever made by trial counsel."). Because these claims were not preserved, we decline to address them. Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

---

[8] Appellant explained that he did not recall making the admissions, as he was medicated from his involuntary commitment.

Appellant is discharged at count four. All other convictions affirmed. Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/09/2023