[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 23-12954

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MELISSA VASQUEZ GUARDADO,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:22-cr-00145-ECM-SMD-2

————————————————

Before BRANCH, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Melissa Guardado appeals her conviction for possession with intent to distribute more than one kilogram of heroin. First, she argues that the district court erred in denying her Federal Rule of Criminal Procedure 29 motions for judgment of acquittal ("Rule 29 motions") because the government provided insufficient evidence to show that she knowingly and intentionally possessed heroin with the intent to distribute it. Second, she argues that the district court abused its discretion in denying the admission of "potentially exculpatory" WhatsApp text messages—which were in Spanish— between her codefendant and the government's testifying witness, L.S. (a minor), despite her proffer of the contents and parties of the messages.

## I.    Motion for Acquittal

We review a challenge to the sufficiency of the evidence and the denial of a Rule 29 motion for a judgment of acquittal *de novo*. *United States v. Beach*, 80 F.4th 1245, 1258 (11th Cir. 2023). We will uphold the district court's denial of a Rule 29 motion for a judgment of acquittal if a reasonable trier of fact could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt. *United States v. Holmes*, 814 F.3d 1246, 1250 (11th Cir. 2016). "We will not overturn a jury's verdict if there is any reasonable construction of the evidence that would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *United States v.*

*Clay*, 832 F.3d 1259, 1294 (11th Cir. 2016) (quotation marks omitted). In other words, we will reverse a conviction based on insufficient evidence only if no reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *United States v. Williams*, 865 F.3d 1328, 1337 (11th Cir. 2017). We must sustain a verdict where "there is a reasonable basis in the record for it." *United States v. Farley*, 607 F.3d 1294, 1333 (11th Cir. 2010) (quotation marks omitted).

We view all facts and inferences in the light most favorable to the government. *Clay*, 832 F.3d at 1293. The evidence need not exclude every reasonable hypothesis of innocence in order for a reasonable jury to find guilt beyond a reasonable doubt, and the jury is free to choose among alternative, reasonable interpretations of the evidence. *Beach*, 80 F.4th at 1255-56. The test for sufficiency of evidence is the same regardless of whether the evidence is direct or circumstantial, with no distinction in the weight given to each. *United States v. Guevara*, 894 F.3d 1301, 1307 (11th Cir. 2018). But where "the government relies on circumstantial evidence, reasonable inferences, not mere speculation, must support the conviction." *United States v. Mendez*, 528 F.3d 811, 814 (11th Cir. 2008).

In prosecuting under 21 U.S.C. § 841(a)(1), the government must prove beyond a reasonable doubt that the defendant: (1) knowingly; (2) possessed a controlled substance; and (3) with intent to distribute it. 21 U.S.C. § 841(a)(1); *United States v. Camacho*, 233 F.3d 1308, 1317 (11th Cir. 2000). "To prove guilt under a theory of aiding and abetting, the [g]overnment must prove: (1) the

substantive offense was committed by someone; (2) the defendant committed an act which contributed to and furthered the offense; and (3) the defendant intended to aid in its commission." *Id.* However, as "guilty knowledge can rarely be established directly, . . . a jury may infer knowledge and criminal intent from circumstantial evidence alone." *United States v. Morley*, 99 F.4th 1328, 1339 (11th Cir. 2024) (quotation marks omitted). While knowledge requirements may be case-specific, "a jury can infer knowledge using certain guideposts, such as whether a defendant was instrumental to a plan's success, had ample opportunities to discover the critical fact, and was in frequent contact with someone who knew that fact." *Id.* at 1340 (quotation marks omitted). In addition, a defendant's intent to distribute a controlled substance "may be inferred from a variety of factors, including whether the government seized a large quantity of controlled substances." *United States v. Cruickshank*, 837 F.3d 1182, 1189 (11th Cir. 2016).

Here, the district court did not err in denying Guardado's Rule 29 motions because, viewed in the light most favorable to the government, there was sufficient evidence for a reasonable jury to find beyond a reasonable doubt that she knowingly possessed the heroin with intent to distribute it. *See Clay*, 832 F.3d at 1293; *Holmes*, 814 F.3d at 1250. First, Guardado and L.S. both testified that, upon arriving at the Waffle House, Guardado exited the vehicle, retrieved the bag, and reentered the vehicle. Guardado also testified that, while retrieving the bag from the individual in the Waffle House parking lot, she confirmed she was "coming from Fidelia's" vehicle and left without asking any questions. Aside from

Guardado's testimony, there was no evidence that Villanueva asked Guardado to retrieve the bag. Second, the evidence demonstrated that the bag stayed in her possession throughout the trip, as: (1) Deputy Sutley testified that he discovered the blue pillowcase underneath a blanket near the back seat floorboard; (2) Guardado and L.S. confirmed that Guardado stayed in the back seat during the trip; (3) Guardado and L.S. acknowledged that Guardado used the blanket during the trip; (4) Guardado confirmed she had the blanket during the traffic stop; (5) the government admitted videos and screenshots showing Guardado using the blanket and sitting in the back seat of the vehicle. Third, the evidence showed that Guardado exhibited abnormal behavior during the traffic stop and the search of the vehicle, including her initial unwillingness to "look at [Deputy Sutley] or engage [him] in any way." In addition, Agent de Stefano testified that, upon questioning Guardado "about the drugs found in the car," she "became defensive" and started "raising her voice." Fourth, Deputies Sutley and Burch testified that, upon removing the blue pillowcase from the vehicle, Villanueva and Guardado "locked eyes" and exchanged an expression of "shock" and "despair," to which Guardado did not object. Fifth, Deputy Burch testified that, in his experience with drug traffic stops, "sometimes [there is] somebody that works directly with a handler" and that receives phone calls during traffic stops, but also confirmed that "just because one person is receiving phone calls . . . [does not] mean anything else about the other person [who is] not receiving phone calls." Moreover, Deputy Sutley and Agent de Stefano testified that individuals transporting drugs preferred to

bring other people with them to lower suspicion with law enforcement and bolster their "cover story." To the extent that Guardado argues that there was insufficient evidence to demonstrate that she aided and abetted Villanueva in the offense, her argument fails in light of the language provided in the jury instructions and verdict form, which permitted the jury to find that she was the principal. In addition, the jury was permitted to consider circumstantial evidence of Guardado's knowledge of the heroin and other "guideposts," including that Guardado had opportunities to discover the critical fact that she retrieved and kept six kilograms of heroin beside her for several hours and that she was in "frequent contact with someone who knew that fact"—namely, Villanueva. *Morley*, 99 F.4th at 1339 40. Finally, Guardado's intent to distribute the heroin could be inferred from the "large quantity of controlled substances" that the government seized, namely, the six kilograms of heroin. *Cruickshank*, 837 F.3d at 1189. Thus, viewed in the light most favorable to the verdict, the government provided sufficient evidence for a reasonable jury to conclude that Guardado knowingly possessed the heroin with the intent to distribute it. *Clay*, 832 F.3d at 1293.

## II.    Admissibility of Evidence

"We typically review a district court's decisions regarding the admissibility of evidence . . . for abuse of discretion." *United States v. Hawkins*, 934 F.3d 1251, 1264 (11th Cir. 2019). A district court abuses its discretion if it applies an incorrect legal standard, employs improper procedures in reaching its determination, makes clearly erroneous findings of facts, or commits a clear error of

judgment.  *United States v. Harris*, 989 F.3d 908, 911-12 (11th Cir. 2021).  However, "even an abuse of discretion will not warrant reversal where the resulting error was harmless." *United States v. Barton*, 909 F.3d 1323, 1330 (11th Cir. 2018).  Moreover, we "will not overturn an evidentiary ruling and order a new trial unless the objecting party has shown a substantial prejudicial effect from the ruling." *Id.* at 1330-31 (quotation marks omitted).  "Substantial prejudice goes to the outcome of the trial," and, "where an error had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict, reversal is not warranted." *Id.* at 1331 (quotation marks omitted).

Generally, "[h]earsay is a statement, other than one made by a declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted." *United States v. Kent*, 93 F.4th 1213, 1218 (11th Cir. 2024) (quotation marks omitted); Fed. R. Evid. 801(c).

Here, the district court did not abuse its discretion in excluding the WhatsApp messages between her codefendant and L.S., because: (1) the messages were in Spanish; (2) Guardado failed to provide a sufficient factual basis for the court to assess the contents of the messages against the hearsay and relevancy objections raised by the government; (3) Guardado's proffer as to the contents of the messages was called into doubt by the government; and (4) Guardado failed to provide an official translation or translated transcript to dispel the hearsay, relevancy, and translation concerns raised by the government.  However, even assuming that the court

abused its discretion in not admitting the text messages, any error was harmless in light of the court permitting Guardado to develop the content of the messages through the testimony of L.S., who was a party to the conversation.  Accordingly, we affirm.

    **AFFIRMED.**